**Exhibit 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MOHAMMEDOU OULD SLAHI,                   )
                                        )
                    Plaintiff,          )
                                        )
                                        )    Civil Action No. 06-CV-0597 (JR)
                                        )
                                        )    DECLARATION OF
                                        )    KAREN L. HECKER
          v.                            )
                                        )
UNITED STATES DEPARTMENT OF             )
DEFENSE,                                )
                                        )
                    Defendant.          )
_____)

KAREN L. HECKER hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.   I am an Associate Deputy General Counsel in the Office of General Counsel of the United

States Department of Defense ("DoD").  In that capacity, I am responsible for, among other

things, overseeing litigation involving the DoD.

2.   As the attorney assigned primary responsibility for overseeing federal court litigation

involving DoD detainees, I have first-hand knowledge of the detainee review processes currently

and previously conducted at Guantanamo. This includes Combatant Status Review Tribunals

("CSRTs"), Administrative Review Boards ("ARBs") and other aspects of detention operations

at Guantanamo.  I have been personally involved with these processes on a regular basis since I

began working in my current position in March 2003.

3.   I am familiar with the May 26, 2005 request of Sylvia Royce ("plaintiff's counsel"), made on behalf of Mohamedou Ould Slahi ("plaintiff"), for records relating to plaintiff, and with the process being employed by DoD to search for documents in response to this request.  Unless otherwise indicated, the statements in this declaration are based upon my personal knowledge and information obtained by me in the course of my official duties.

4.   The purpose of this declaration is to provide information concerning the history of the Freedom of Information Act ("FOIA") request submitted by plaintiff, the searches undertaken by DoD in response to that request and the processing of certain responsive documents.

### PLAINTIFF'S FOIA REQUEST

5.   Plaintiff is a foreign national who is currently detained by DoD at the Guantanamo Bay Naval Base as an enemy combatant.  In a letter dated May 26, 2005, plaintiff's counsel (who was also representing plaintiff in a habeas corpus case in this Court) submitted a FOIA request to DoD's Office of Freedom of Information and Security Review ("DoD FOIA") seeking "records relating to Mohamedou Ould Slahi aka Mohammedou Ould Salahi, born in Mauritania in approximately 1970."  *See* Exhibit A.  The request for records includes "memoranda, inter-agency communications, case summaries, notes, indexes, jottings, message slips, letters, facsimile transmissions, diaries, E-Mails and calendars."  The request indicated that plaintiff's counsel was willing to pay reasonable copying costs up to $25, and requested that she be informed if the copying costs were to exceed $25.  *Id.*

6.   On or about June 30, 2005,  DoD FOIA informed plaintiff's counsel that it had referred the FOIA request to United States Southern Command ("SOUTHCOM"), the DoD component that

2

encompasses Joint Task Force-Guantanamo ("JTF-GTMO"), because it had determined that the requested records, if they existed, were likely under the cognizance of that component.

7.    On July 13, 2005, SOUTHCOM acknowledged receipt of the FOIA request.  At the time plaintiff's request was made, SOUTHCOM already had over 55 pending FOIA requests from attorneys representing Guantanamo detainees.  These requests, which often covered multiple detainees, usually requested essentially all documents regarding the counsel's detainee-clients. Plaintiff's request was placed in the queue behind other FOIA requests that were filed before it.

8.   By letter dated January 3, 2006, plaintiff's counsel wrote to SOUTHCOM to inquire about the status of the FOIA request.  The letter additionally stated that counsel was particularly interested in receiving plaintiff's medical records.

9.   By letter dated April 14, 2006, SOUTHCOM informed plaintiff's counsel that its search had located approximately 1,200 pages of documents responsive to plaintiff's initial FOIA request and that those documents had been referred to DoD FOIA for further review.  In the same letter, SOUTHCOM further advised plaintiff's counsel that it was still working on processing plaintiff's medical records.  Subsequently on April 20, 2006, SOUTHCOM advised plaintiff's counsel that it had located approximately 200 pages of information that were responsive to counsel's request for medical records, and that those documents similarly had been referred to DoD FOIA for further review.  In total, DoD expended 13 hours of "professional level" search time in gathering these records, and a significant amount of additional time reviewing and processing these documents for release to plaintiff.

10.  On May 31, 2006, DoD, through counsel, released to plaintiff's counsel approximately 200 pages of medical records relating to plaintiff.

3

11.   On July 28, 2006, DoD, through counsel, further informed plaintiff's counsel that DoD had completed a review of the responsive materials previously gathered by SOUTHCOM, and that DoD would produce approximately 30 pages of those materials on August 1, 2006.  As authorized by FOIA and under DoD's FOIA regulation, 5 U.S.C. § 552(a)(4)(A)(iv); 32 C.F.R. § 286.28, DoD requested that plaintiff's counsel remit $252 for the search and reproduction of those materials as well as the previously released medical records.  *Id.*  The amount did not include what plaintiff was entitled to receive under FOIA without charge (two hours of professional search time and 100 pages of duplication) with respect to those documents.  32 C.F.R. § 286.28.  DoD also informed plaintiff that the remaining documents (estimated at 600 documents totaling approximately 2,500 pages) would be heavily redacted and that the cost for reproducing those documents would be $.15 per page, as authorized by regulation.  (These were the same estimated "1,200 pages" of documents that SOUTHCOM had advised plaintiff's counsel about in April 2006.)   DoD further advised plaintiff's counsel that if she wanted DoD's search for responsive documents to extend to DoD organizations beyond SOUTHCOM, she must make a commitment to pay additional fees for those searches and the reproduction costs of any responsive documents that are found, as authorized by regulation.  *See* paragraph C1.4.2 and Chapter 6 of DoD FOIA Program Regulation 5400.7R, available at

http://www.dtic.mil/whs/directives/corres/pdf/540007r_090498/540007r.pdf .

12.   On July 31, 2006, plaintiff's counsel declined to pay the $252 charge assessed by DoD.  She stated her belief that the charge should have been limited to $25 because DoD had not complied with her request for advance notice if the reproduction fee was to exceed $25.  Plaintiff's counsel further stated that she had "no interest" in receiving the 600 documents at that time.

4

13.   On August 1, 2006, DoD released to plaintiff's counsel 22 pages of partially redacted documents, noting that, upon inspection, DoD had determined that only 22 of the 30 previously mentioned pages were responsive to the FOIA request.

14.   On May 17, 2007, after certain litigation activity in this case (including this Court's stay, dismissal and reinstatement of this case), DoD, through counsel, agreed that it would accept payment of $25, in lieu of the assessed $252, for the 13 hours of search already performed by DoD and the reproduction of materials already produced to plaintiff.  DoD agreed to waive the difference because plaintiff's counsel was not notified in advance that the relevant fee was going to exceed $25.  Through counsel, DoD again informed plaintiff's counsel that if she wished to receive the approximately 600 documents DoD had already located, those documents could be produced to her at DoD's established reproduction fee of $.15 per page.  DoD advised plaintiff's counsel that this fee must be paid before DoD would produce the documents.  Moreover, DoD, through counsel, again advised plaintiff's counsel that if she wanted additional searches conducted beyond SOUTHCOM, she must make a commitment to pay for such searches.  DoD also provided plaintiff's counsel with a Detainee Search Chart listing the record systems most likely to have the largest number of responsive records concerning detainees held at Guantanamo Bay, Cuba; DoD's established search rates per hour for different levels of DoD personnel; and estimated average search times for different DoD organizations and commands.

15.   On May 21, 2007, plaintiff's counsel remitted $25 to DoD.  Plaintiff's counsel also requested a waiver of fees for the other 600 documents already located by DoD and for any records of the polygraph examinations and interrogations logs (which she had recently requested after this case was reinstated by the Court) if those documents were not included within the

documents already identified by DoD. Plaintiff's counsel asserted that she has been representing plaintiff in both the FOIA and habeas cases on an *pro bono* basis and that there is a strong public interest in DoD's treatment of Guantanamo detainees in general and of plaintiff in particular.

16.   On June 11, 2007, DoD asked plaintiff's counsel to provide additional information in support of the fee waiver request. Specifically, DoD noted that plaintiff's counsel failed to address her intent and ability to disseminate the information to the public as a whole, which is a key factor in determining a fee waiver. On June 27, 2007, DoD received plaintiff's counsel's response (dated June 20, 2007), indicating that she has received requests for information about plaintiff and his case from the media, and that plaintiff therefore satisfies the public dissemination requirement for purposes of a fee waiver.

17.   On June 28, 2007, the parties resolved the fee issue. Specifically, regarding the approximately 600 documents already identified by DoD, DoD agreed to waive the search fee for an unrelated reason; DoD waived the fee because it did not obtain plaintiff's prior commitment to pay for the search. Plaintiff, in turn, agreed to accept the production electronically, thus avoiding any duplication cost for the production of those documents, and rendering moot plaintiff's fee waiver request as to those documents. As for plaintiff's fee waiver request regarding the additional search for records of interrogation logs and polygraph exams, DoD informed plaintiff's counsel that it could not make a fee waiver determination until plaintiff made a commitment to pay for the search and until any responsive documents are reviewed and applicable exemptions determined. These steps were required in order for DoD to determine whether the information to be released is likely to contribute significantly to public

understanding of the operations and activities of the government, and thus appropriate for a fee waiver.

18.   On June 28, 2007, plaintiff's counsel agreed to make a commitment to pay for the polygraph and interrogation log search (which was estimated at 1.5 hours at the clerical hour rate of $20 per hour), and to accept the production electronically, in the event DoD does not grant the fee waiver request as to the production of responsive, non-exempt documents found during that search.  Because DoD's dispositive motion was due July 2, 2007, the parties also agreed to an extension of time to enable DoD time to complete processing of the 600 documents that had already been located, to conduct the additional search for records of interrogations logs and polygraph examinations, and to process any documents found in those searches.

19.   However, before DoD filed its extension motion, plaintiff's counsel raised for the first time that she also desired searches to be done beyond SOUTHCOM.  On June 29, 2007, plaintiff's counsel committed to paying for the search of those DoD components listed in the Detainee Search Chart provided to her over a month earlier.

20.   Because DoD was only then commencing its search for responsive documents beyond SOUTHCOM, the parties agreed that DoD would have until August 31, 2007 to search for these newly-requested documents, to estimate a production schedule for documents located during those searches, and to determine an appropriate briefing schedule for DoD's dispositive motion regarding any withheld information for the documents found by DoD that were responsive to the FOIA request.   DoD agreed, in the meantime, that it would produce responsive, nonexempt documents to plaintiff as they become available on a rolling basis.

21.   In the course of conducting these additional searches, DoD found documents that referenced two additional DoD components not listed in the Detainee Search Chart, and thus, that were not already being searched:  the U.S. Army Intelligence and Security Command ("INSCOM") and U.S. European Command ("EUCOM").  The references in these documents to these two components lead DoD to believe that the components may also have responsive documents. DoD sought fee estimates from these two components and, through counsel, advised plaintiff's counsel on August 9, 2007, that these two components might have responsive documents and that if plaintiff's counsel desired to have them searched, she would need to commit to pay for the searches (estimated at 10 hours for INSCOM and 8 hours for EUCOM) at the same rates as those listed on the Detainee Search Chart.   On August 12, 2007, plaintiff's counsel committed to pay for those searches.   On August 15, 2007, these organizations were tasked to search for responsive documents.

22.   On August 24, 2007, DOD produced to Plaintiff 205 pages from the approximately 600 documents found at SOUTHCOM.

### The Processing of the Approximately 600 Documents Found at USSOUTHCOM

23.   As noted above, in its initial search for responsive documents, SOUTHCOM found approximately 600 documents that were responsive to plaintiff's FOIA request.  (These documents were initially estimated to total 1,200 pages and were later estimated to total approximately 2,500 pages).  Each of these documents was marked "SECRET," indicating that its originator had determined that the information contained within them was classified.

24.   When responsive documents are found at JTF-GTMO (as was the case with these 600 documents), they are initially reviewed by FOIA personnel located at Guantanamo.  This review

consists of a line-by-line examination of the documents by FOIA personnel and, in the case of

classified documents, also by individuals directly involved with the intelligence gathering

operation at JTF-GTMO (which includes analysis of intelligence gathered from detainees at JTF-

GTMO). This latter review is required due to the sensitive nature of these documents, and

ensures that classified information is not improperly released to the public.

25.  Following the review of the documents at JTF-GTMO, FOIA personnel there process the

documents for release, as deemed appropriate under FOIA. The documents are scanned into a

form that can then be edited though the use of software that allows for it to be redacted and

printed for delivery to the requester.   Using this software, each page is then physically annotated

with the withholding decisions made by JTF-GTMO personnel. The documents are then

reviewed by attorneys assigned to JTF-GTMO, to ensure that the proposed release and

withholdings are in conformance with FOIA.

26.  Because JTF-GTMO is a subordinate organization to SOUTHCOM, any documents being

proposed for release or withholding under FOIA by JTF-GTMO must then be reviewed by FOIA

and legal personnel at SOUTHCOM. If SOUTHCOM disagrees with JTF-GTMO's proposed

withholdings or release, personnel at JTF-GTMO and SOUTHCOM would discuss the

disagreement and come to a joint decision regarding the release or withholding.

27.  Once JTF-GTMO and SOUTHCOM agree on the proposed withholdings and releases, the

documents are forwarded to the DoD FOIA for final processing and release to the requester.  As

part of that processing, the proposed withholdings and releases are reviewed by personnel in

DoD FOIA, to ensure consistency and accuracy in the FOIA process.  In the event that DoD

FOIA disagrees with any proposed withholdings or releases, DoD FOIA is required to communicate with JTF-GTMO and SOUTHCOM regarding that disagreement.[1]

28.  In the case of the approximately 600 documents found by JTF-GTMO in 2006, these documents were processed by JTF-GTMO and SOUTHCOM, as described above, and their proposed withholdings indicated that the documents were going to be almost entirely redacted. That information was passed on to plaintiff's counsel in July 2006.  When, in May 2007, plaintiff's counsel first expressed her desire to receive the 600 documents, my office believed that most of the substantive reviews of these documents had been conducted and that the documents were close to ready for production to plaintiff,  Thus, in late June 2007 when the parties were discussing and agreeing on an appropriate extension, DoD agreed that it would provide these documents to plaintiff on a "rolling basis" while DOD conducted the other requested searches.

29.   However, after DoD filed its motion for a stay on June 29, 2007, and DoD FOIA began a substantive review of the 600 documents, it believed some of JTF-GTMO and SOUTHCOM's proposed withholdings were inaccuate.  Ultimately, DoD FOIA determined that it needed to re-scan and reprocess all pages of the documents.  Once DoD FOIA reprocessed groups of pages within these documents, those groups had to be returned to JTF-GTMO and SOUTHCOM in order for them to validate and approve DoD FOIA's changes to their original recommendations. Once again, any disputes between DoD FOIA and the command would need to be resolved before the pages could be produced.  Accordingly, through counsel, DoD informed plaintiff's

---

[1]  A similar process is followed when DoD FOIA interacts with other DoD components or organizations who have reviewed documents for potential release or withholding under FOIA.

counsel that the "rolling" production of these documents was not going to begin immediately and that further processing was being undertaken.

30.   Additionally, due to the fact that plaintiff is being considered for potential prosecution by a military commission for his alleged war crimes, the documents were also reviewed by members of the prosecution team investigating his case, in order to determine the applicability of the law enforcement exemption under FOIA Exemption (b)(7).

31.   Although this process was begun promptly, DoD was not able to produce the first set of these documents to plaintiff's counsel (205 pages) until August 24, 2007.  These documents were heavily redacted.  The next set of approximately 247 pages of documents will be provided to plaintiff's counsel on August 29, 2007.  The remainder of the documents are still being processed; it is estimated that they will be provided to plaintiff's counsel by September 14, 2007.

## Tasking of Other DoD Components and Organizations

32.   As noted above, following plaintiff's commitment on June 29, 2007 to pay fees for the searches of various DoD organizations and components listed on the Detainee Search Chart, those organizations and components were tasked to search for responsive documents, as discussed below.  The following is the status of such searches:

33.   **United States Southern Command:**  SOUTHCOM is one of nine unified Combatant Commands ("COCOMs") in the DoD.  It is responsible for providing contingency planning, operations, and security cooperation for Central and South America, the Caribbean (except U.S. commonwealths, territories, and possessions), Cuba and the Bahamas, and their territorial waters; as well as for the force protection of U.S. military resources at these locations. SOUTHCOM is also responsible for ensuring the defense of the Panama Canal and canal area.

One of SOUTHCOM's components is Joint Task Force-Guantamamo ("JTF-GTMO"). JTF-GTMO conducts detention and interrogation operations in support of the War on Terrorism, coordinates and implements detainee screening operations, and supports law enforcement and war crimes investigations.

    a.  On May 24, 2007, JTF-GTMO was tasked to conduct a supplemental search specifically for records of polygraph examinations and "interrogation logs."

    b.  JTF-GTMO has completed its search. No "interrogation logs" were found and four polygraph documents were found. Each of these documents either originate with or contain information derived from another agency. Accordingly, JTF-GTMO must refer these documents to those outside agencies to be reviewed for possible release, pursuant to DoD's FOIA regulation. *See* paragraph C1.5.9 of DoD FOIA Program Regulation 5400.7R, *supra*. This process has recently been initiated for these documents. DoD is in the process of coordinating with these components and outside agencies in order to determine a production date for these responsive documents.

34. **United States Central Command ("CENTCOM"):** CENTCOM, like SOUTHCOM, is one of nine unified COCOMs in the DoD. Its area of responsibility stretches from the Horn of Africa to Central Asia. CENTCOM is responsible for military operations within that region, as well as protecting the vital interests of the United States within the area of responsibility. Based on its mission, CENTCOM has been involved in detention and detainee operations within the region.

    a.  On July 3, 2007, CENTCOM was tasked to conduct a search for documents responsive to plaintiff's FOIA request.

b.  On or about August 16, 2007, CENTCOM responded that it had found no records responsive to the request.

35.  **United States Transportation Command ("TRANSCOM"):**  TRANSCOM is responsible for providing air, land and sea transportation for DoD, both in time of peace and time of war.  At times, this has included the transportation of detainees.

a.  On July 3, 2007, TRANSCOM was tasked to conduct a search for documents responsive to plaintiff's FOIA request.

b.  On July 17, 2007, TRANSCOM responded that it had found no records responsive to the request.

36.  **Defense Intelligence Agency ("DIA"):**  DIA's mission is to provide timely, objective, and cogent military intelligence to warfighters, defense planners, and defense and national security policymakers.

a.  On July 3, 2007, DIA was tasked to conduct a search for documents responsive to plaintiff's FOIA request.

b.  On July 26, 2007, DIA responded that it had found 671 responsive documents totaling approximately 3,165 pages.

1)  Of these, 65 documents (totaling approximately 374 pages) were documents originating with DIA.   These documents are undergoing review by DIA.  DIA anticipates being able to determine a processing and production schedule for these documents within the next 30 days.

2)  The rest of the documents have already been referred to other components (3 were referred to the Air Force, 28 documents were

13

referred to the Army, 5 documents were referred to the Navy, 19 documents were referred to CENTCOM, 32 documents were referred to European Command, 51 documents were referred to the FBI, 1 document was referred to Joint Forces Command, 2 documents were referred to Northern Command, 305 documents were referred to SOUTHCOM, 3 documents were referred to TRANSCOM, 13 documents were referred to the Department of State, and 144 documents were referred to another government agency whose identity cannot be disclosed in this format.)  As discussed above, these documents must be referred to the originating organization for a release decision.  DoD FOIA is in the process of coordinating with these components and outside agencies in order to determine a production date for these responsive documents.

37. **Criminal Investigation Task Force ("CITF"):**  CITF's primary mission is to investigate non-U.S. citizen detainees captured during the Global War on Terror and suspected of illegal activities in conjunction with their affiliation to al Qaida and other enemies of the state. The objective is to either refer the cases to the DoD Office of Military Commissions for criminal prosecution or to identify detainees who should be released and/or transferred from DoD control.  Information obtained as the result of these investigations is also provided to the U.S. intelligence community.

    a.  On July 3, 2007, CITF was tasked to conduct a search for documents responsive to plaintiff's FOIA request.

14

b.  On August 2, 2007, CITF responded that it had found 42 documents responsive to the request, totaling approximately 138 pages.

1)  Two of these documents did not originate with CITF and are therefore being referred to the originating organization, as discussed above.  DoD is in the process of coordinating with these components and outside agencies in order to determine a production date for these responsive documents.

2)  Personnel at CITF have reviewed the 40 documents that originated with its organization and have forwarded these documents to DoD FOIA for further review and processing.  This review and any resultant document production should be completed by September 30, 2007.

38. **United States Special Operations Command ("SOCOM"):**  SOCOM is charged with overseeing the various Special Operations Commands of each branch of the U.S. armed forces. When Special Operations Forces of the different branches are used, SOCOM acts as the Joint Command Center of all the forces used in a given operation. SOCOM leads, plans, synchronizes, and as directed, executes global operations against terrorist networks.  In addition, SOCOM trains, organizes, equips and deploys combat ready special operations forces to combatant commands.

a.  On July 3, 2007 SOCOM was tasked to conduct a search for documents responsive to plaintiff's FOIA request.

b.  On August 8, 2007, SOCOM responded that it had found no records responsive to the request.

39.    **Office for the Administrative Review of Detained Enemy Combatants ("OARDEC"):**
OARDEC is an organization within the DoD that is responsible for several processes involving detainees at Guantanamo Bay, Cuba.  Specifically, OARDEC conducts Combatant Status Review Tribunals ("CSRTs") and Administrative Review Boards ("ARBs") for each detainee at Guantanamo Bay, Cuba.

   a.   On July 3, 2007, OARDEC was tasked to conduct a search for documents responsive to plaintiff's FOIA request.

   b.   OARDEC has completed its search and has found approximately 537 pages that are responsive to plaintiff's FOIA request.

        1)   Only approximately 40 pages of these documents originated with OARDEC and do not contain references to information that originated with other organizations.  These pages will be processed and provided to plaintiff's counsel on August 29, 2007.

        2)   The remainder of the pages originated with organizations other than OARDEC or cite from documents that originated with other organizations. DoD FOIA is in the process of referring these documents to the originating components and agencies, as discussed above.   DoD FOIA will then coordinate with these components and outside agencies in order to determine a production date for these responsive documents.

40.   **Joint Staff:**  The Joint Staff assists the Chairman of the Joint Chiefs of Staff in preparing strategy for and directing unified combatant forces, and for integrating them into an efficient

16

team of land, naval, and air forces.  The Joint Staff is composed of officers from the Army,

Navy and Marine Corps, and Air Force.

    a.  On July 9, 2007, the Joint Staff was tasked to conduct a search for documents

        responsive to plaintiff's FOIA request.

    b.  Currently, the Joint Staff is inundated with a large number of FOIA requests.  They

        anticipate being able to determine a processing and production schedule within the

        next 30 days.

41.  **Office of Detainee Affairs**:  The Office of Detainee Affairs ("ODA") is organized under

the office of the Under Secretary of Defense for Policy.  This office is responsible for providing

policy advice to the Under Secretary of Defense on matters regarding detainees in DOD custody.

    a.  On July 3, 2007, ODA was tasked to conduct a search for documents responsive to

        plaintiff's FOIA request.

    b.  ODA is in the process of completing its search and should be done finding and

        processing documents responsive to plaintiff's FOIA request by approximately

        August 30, 2007.  Once ODA is done processing any responsive documents, the

        documents will be forwarded to the DoD FOIA office for final processing.  It is

        possible that this search will find documents that originate with or contain

        information that originated with other components or agencies.  If so, these

        documents will need to be forwarded to those organizations for review, as discussed

        above.  Until this search is complete, DoD is unable to determine a production

        schedule for any responsive documents.

42.  As discussed infra, on August 12, 2007, plaintiff's counsel committed to paying for the search of two additional DoD components not listed on the Detainee Search Chart:  United States European Command and United States Army Intelligence and Security Command.  Both of those components were tasked on August 15, 2007, and both are expected to report the result of their searches by September 14, 2007.  Until those searches are complete, DoD is unable to determine a production schedule for any responsive documents.  If these organizations find responsive documents, it is likely that the documents will either originate with or contain information that originated with other agencies or organizations.  If so, these documents will need to be referred to those organizations for review and a release decision.  DoD FOIA will then coordinate with these components and outside agencies in order to determine a production date for these responsive documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2007.

_Karen L. Hecker_
Karen L. Hecker

18

# Exhibit A to Declaration of
# Karen L. Hecker

SYLVIA ROYCE

ATTORNEY AT LAW

5505 CONNECTICUT AVENUE, NW, #340

WASHINGTON, DC 20015

SYLVIA_ROYCE@HOTMAIL.COM

TELEPHONE
(202) 362-3445

FACSIMILE
(202) 686-4271

May 26, 2005

James Hogan
Office of Freedom of Information/Security Review
Department of Defense
Room 2C757
1155 Defense Pentagon
Washington, DC   20301-1155

Re:    Freedom of Information Act Request

Dear Mr. Hogan:

This is a request under 5 U.S.C. § 552 et seq. as amended, for records relating to

**Mohamedou Ould Slahi aka Mohammedou Ould Salahi,**
born in Mauritania in approximately 1970.

Our request for records includes, but is not limited to, memoranda, inter-agency communications, case summaries, notes, indexes, jottings, message slips, letters, facsimile transmissions, diaries, E-Mails and calendars.

I represent Slahi in Civil Case number 1:05-0569 (JR) in the U.S. District Court for the District of Columbia.

I will pay reasonable copying costs.  Kindly advise me if the cost of copying will exceed $25.

If you deny all or any part of this request, please cite each specific exemption you think justifies your refusal to release the information and notify me of appeal procedures available under the law.

Slahi FOIA request, page 2 (DOD)

If you have any questions about handling this request, please telephone me at (202) 362-3445.

Sincerely,

Sylvia Royce