UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| MOHAMMEDOU OULD SLAHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-CV-0597 (JR) |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant, the Department of Defense ("DoD"), submits this reply in support of its

motion for partial summary judgment with respect to information redacted or otherwise withheld

from documents located in the United States Southern Command ("Southern Command") and

responsive to plaintiff's request seeking all records relating to him under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.[1]  In its opening brief, DoD demonstrated that it has

conducted searches reasonably calculated to discover all potentially responsive documents and

has withheld only information falling within a specific FOIA exemption – namely, Exemptions 1,

2, 3, 5, 6 and 7.  Through the declaration of Rear Admiral Mark H. Buzby, Commander of Joint

Task Force–Guantanamo ("JTF-GTMO") and an original secret classification authority, DoD

demonstrated that the majority of the withheld information is classified and thus properly falls

within Exemption 1 (with substantial overlap with other exemptions).

_____

[1]  The status of DoD's processing of plaintiff's FOIA in eleven other DoD commands,
organizations, and offices is reported in defendant's Second Status Report filed on November 21,
2007.  As DoD noted in that report, those DoD components have located close to 4,800 pages of
additional responsive documents.

In response, plaintiff challenges both the adequacy of DoD's search and the withholding of certain categories of information. Specifically, he challenges the withholding of information concerning the circumstances of his capture and transfer to Guantanamo Bay Naval Base ("Guantanamo"), the dates relating to his interrogations, and the dates of certain documents. He also challenges the withholding of alleged "illegal and brutal interrogation methods government personnel used against [him]"; and the identities of DoD personnel who allegedly "devised, approved, and implemented the abuse and torture of [him]." Pl's Opp'n at 1. Plaintiff requests that DoD be ordered to produce a supplemental *Vaughn* index that includes the withheld dates. He also requests that this Court conduct an *in camera* review of certain withheld information (although plaintiff does not specify which withheld information) so as to "insure that information has not been withheld solely to prevent embarrassment to DoD."[2] *Id.* at 2.

As discussed below, whether this Court wishes to conduct an *in camera* review to spot check the propriety of DoD's withholdings is a matter entirely within this Court's discretion. DoD respectfully submits, however, that such review is unwarranted here. The central, unsubstantiated premises of plaintiff's asserted entitlement to, or the public's alleged interest in, the withheld information are plaintiff's alleged illegal capture and transfer to Guantanamo, DoD's alleged use of illegal interrogation methods, and plaintiff's alleged torture and abuse by DoD personnel during his detention at Guantanamo. This case, however, is not about the legality

---

[2] Plaintiff further complains that the *Vaughn* index offers no description of documents found at bates numbers 861-866, 867-870 and 1447-54, and that certain memoranda for record were mislabeled in the *Vaughn* index as summary interrogation reports. Pl's Opp'n at 22 n. 8, and 34. As noted in the Second Declaration of Rear Admiral Mark H. Buzby, dated December 8, 2007, ¶ 9, ["Ex. A"], DoD has attached a revised *Vaughn* index ["Ex. B"] to address those complaints.

of DoD's detention or treatment of Slahi.  Rather, this case is about whether DoD has fully

complied with its statutory obligations under FOIA.  Yet, to respond to plaintiff's now narrowed

request focusing only on those documents relating to DoD's alleged misconduct would require

this Court to delve into issues such as the legality of plaintiff's capture, detention, interrogation,

and treatment and to make conclusions regarding those issues based on the limited record

presented in this case.  Even assuming the requested information exists and can readily be

segregated, its disclosure would reveal information that is itself classified, such as the linking of

any particular interrogation method to a detainee or information relating to the circumstances of a

detainee's capture, and thus potentially causing damage to the national security.

 Contrary to plaintiff's belief, any asserted public interest in the withheld information is

not a factor to be balanced against the Government's interest in national security and

safeguarding its law enforcement and interrogations techniques.  *See* Exec. Order 12958, as

amended, 68 Fed. Reg. 15315 (March. 25, 2003) (listing criteria for keeping information secret in

the interest of national defense or foreign policy); *see, e.g., People for the Am. Way Found. v.

NSA*, 462 F. Supp. 2d 21, 32-33 (D.D.C. 2006) (Exemption 1); *Cooker v. ATF*, 670 F.2d 1051,

1074 n.60 (D.C. Cir. 1981) (Exemption 2); *Judicial Watch v. Department of Commerce*, 337 F.

Supp. 2d 146, 165 (D.D.C. 2004) (Exemption 2) ("[i]n light of Exemption 2's anti-circumvention

purposes, public interest in the disclosure is legally irrelevant").  Again, the only question

presented here is whether the withheld information is exempt from disclosure under one or more

of FOIA's exemptions.  On that question, plaintiff has failed to rebut DoD's detailed declarations

and *Vaughn* index, which establish beyond dispute that the withheld information is properly

protected from disclosure under FOIA.

In addition, DoD has attached a supplemental declaration from Rear Admiral Buzby to further explain the bases for withholding certain dates from the responsive records. *See* Second Declaration of Rear Admiral Mark H. Buzby, dated December 8, 2007, attached as Exhibit A. Rear Admiral Buzby explained, for example, that information relating to the dates of interrogations is properly classified because its disclosure would reveal the frequency, duration, and pattern of interrogations relating to plaintiff (and possibly other detainees in general) and could also reveal the timing of when certain intelligence information was obtained and from whom, which in turn could impede DoD's future interrogation and other counterterrorism activities. *Id.* ¶ 6. The law is clear that this type of assessment regarding potential damage to the national security is entitled to substantial deference, and plaintiff's mere allegations of government misconduct is insufficient to call into question the propriety of such assessments. Accordingly, this Court should grant DoD's motion for partial summary judgment.

## ARGUMENT

## I.    PLAINTIFF HAS NOT REBUTTED DOD'S JUSTIFICATIONS FOR ITS CLAIMS OF EXEMPTIONS

### A.    DoD Has Properly Withheld Information Relating to Its Interrogation Methods and Techniques Used With Plaintiff.

As explained in its opening brief, DoD has withheld interrogation methods and techniques used with plaintiff under Exemptions 1, 2 and 7(E) because Rear Admiral Buzby determined that disclosure of the information would result in significant harm to the United States' counterterrorism and law enforcement efforts. *See* Buzby Decl., ¶¶ 37, 65. Plaintiff challenges the withholding to the extent the information relates to "past application of illegal or now-discontinued interrogation methods." Pl's Opp'n at 24. According to plaintiff, there can be

no harm to national security in disclosing methods that should never have been used in the first place or which are specifically prohibited from being used in the future, nor can the disclosure of unauthorized or illegal investigative tactics risk circumvention of the law. *Id.* at 21, 24, 25-26.

Plaintiff's argument has no merit. As an initial matter, plaintiff's argument incorrectly assumes that all discontinued interrogation techniques are illegal. Although a DoD investigation regarding allegations of detainee abuse at Guantanamo did find three unauthorized interrogation acts committed against certain detainees, *see* John T. Furlow and Randall M. Schmidt, Army Regulation 15-6 Final Report: Investigation into FBI Allegations of Detainee Abuse at Guantanamo Bay, Cuba Detention Facility ("Schmidt-Furlow Report") at 1 (attached as Ex. G to Pl's Opp'n), an interrogation method could have been discontinued for a variety of reasons, such as its lack of effectiveness vis-a-vis a specific detainee population. *See id.* at 4 (noting that interrogation techniques contained in [Army Field Manual 34-52] were ineffective against detainees who had received interrogation resistance training); Buzby Decl, ¶ 66 (noting that the behavior of detainees at Guantanamo shows that they are well-versed in the contents of the Manchester Document, an Al Qaeda training manual, which has a lengthy section on counterinterrogation techniques).

More importantly, plaintiff's argument misapprehends the harm that reasonably could be expected to result from disclosure of specific interrogation techniques used with plaintiff. As discussed by Rear Admiral Buzby, the disclosure of the particular techniques used with particular detainees such as plaintiff would provide a far more detailed picture of DoD's interrogation process than general information on interrogation techniques. *See* Buzby Decl, ¶ 65. Such disclosure would provide persons hostile to the United States with information concerning the

5

circumstances in which certain interrogation techniques are or may be used, permitting them to discern patterns of interrogation, draw conclusions regarding which techniques are or are not effective, and even create profiles of interrogation methods used on detainees possessing certain characteristics and map the characteristics that give rise to the use of certain techniques.  *Id.*; *see also Blanton v. Department of Justice*, 63 F. Supp. 2d 35, 49-50 (D.D.C. 1999) (proper to withhold manner and circumstances in which particular law enforcement technique is employed even where technique itself has been disclosed); *Wickline v. FBI*, No. 92-1189 (SSH), 1994 WL 549756, at \*5 (D.D.C. Sept. 30, 1994) (even commonly known procedures are protected from disclosure when "circumstances of their usefulness . . . may not be widely known" (internal quotation marks omitted)).  This harm is the same whether the interrogation techniques previously used with plaintiff are still being used today or have been discontinued for whatever reason.  In either situation, the disclosure would allow knowledgeable persons to deduce the characteristics and circumstances that gave rise to the use of the interrogation technique, thus disclosing the perceived value of that detainee to the United States, among other things.

The harm is particularly evident when the application to other FOIA requests of such a decision by defendant is considered.  If DoD is also required to release past interrogation techniques used with other detainees pursuant to other FOIA requests, knowledgeable persons potentially would be able to piece together the information and gain a clear picture of DoD's intelligence gathering and interrogation approaches.  *See Center for Nat'l Sec. Studies v. Department of Justice*, 331 F.3d 918, 928-29 (D.C. Cir. 2003) (deferring to agency determination to withhold names of individual detainees because the disclosure would allow knowledgeable persons to piece together a "composite picture" of September 11 investigation and enable

6

terrorists to evade investigation and devise countermeasures); *Halperin v. CIA,* 629 F.2d 144, 150 (D.C. Cir. 1980) ("[e]ach individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself"); *Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978) ("Thousands of bits and pieces of seemingly innocuous information can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate.").

 For this reason, while DoD has updated its standards relating to interrogation, *see* Army Field Manual 2-22.3, Human Intelligence Collector Operations, and has made public not only those standards but also many of its current and past interrogation methods and techniques, information that would link the methods and techniques to any particular detainee has consistently remained classified. *See, e.g.,* Schmidt-Furlow Report; Vice Admiral A.T. Church III, Review of Department of Defense Detention Operations and Detainee Interrogation Techniques, *available at* http://www.dod.mil/pubs/foi/detainees/other_related.html.

Plaintiff's speculation that no harm can flow from the requested disclosure, moreover, is insufficient to rebut DoD's reasonable showing. Plaintiff is not qualified to determine what is or is not harmful to the national security. Rather, Rear Admiral Buzby is the one charged with making that assessment. And, as the D.C. Circuit has noted, "a reviewing court 'must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm.'" *Wolf v. C.I.A*, 473 F.3d 370, 375 (D.C. Cir. 2007) (quoting *Halperin v. CIA,* 629 F.2d 144, 149 (D.C. Cir. 1980)). Thus, in the national security context, the agency's justification need only be "logical or "plausible," and its affidavit concerning the details of the classified status of the

disputed record must be accorded "substantial weight." *Id.* at 375; *see also Krikorian v. Dep't of State,* 984 F.2d 461, 464 (D.C. Cir. 1993) (noting deference to expertise of agencies engaged in national security and foreign policy); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001); *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990); *Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982); *Military Audit Project v. Casey*, 656 F.2d 724, 745 (D.C. Cir. 1981); *Halperin*, 629 F.2d at 148. Because DoD has presented a logical justification for its determination that potential harm merits classification of information linking any interrogation technique to plaintiff, this Court should not second guess that determination.

In sum, DoD has properly withheld information relating to past interrogation methods and techniques used with plaintiff.[3]

### B.    DoD Has Properly Withheld Information Relating to Certain Dates From the Responsive Documents It Produced.

In the documents produced to plaintiff, DoD has withheld under Exemptions 1 and 2 information relating to the dates of interrogations, the dates of planned future interrogations, and the dates of documents discussing or analyzing interrogations. In addition, DoD has withheld under Exemption 2 dates contained in the intelligence records, including the dates those records were created. Although the exemptions are noted on the redacted documents released to plaintiff and in the *Vaughn* index, DoD did not provide a narrative discussion of its justifications.

---

[3] Because the information is properly withheld under Exemption 1, the Court need not reach the Exemption 2 and 7(E) issues to sustain the withholding. But even if this Court wishes to do so, the same rationale concerning the potential circumvention of DoD's intelligence gathering and counterterrorism efforts applies to justify DoD's claims under Exemptions 2 and 7(E). *See* Buzby Decl., ¶¶ 37-42, 64-65.

Plaintiff challenges the withholdings, finding it "difficult to fathom DoD's basis for concluding that release of the dates on which [plaintiff] was interrogated 'could reasonably be expected to cause damage to the national security.'"  Pl's Opp'n at 28 (quoting Executive Order 12958). Plaintiff also mistakenly assumes that DoD has redacted other dates under Exemption 2 (low), which exempts from disclosure internal agency information that is of no genuine public interest. *See id.* at 27.

As explained in the attached Second Declaration of Rear Admiral Buzby, information relating to the dates of interrogations, the dates of planned future interrogations, and the dates of documents discussing or analyzing interrogations of plaintiff are classified because the disclosure would reveal a critical aspect of DoD's intelligence activities, procedures, and methods.  2d Buzby Decl., ¶ 6.  It would reveal, for example, the frequency, duration, and pattern of interrogations relating to plaintiff (and possibly other detainees in general).  *Id.*  With this information, knowledgeable persons could also discern the timing of when certain intelligence information was obtained.  *Id.*  In other words, the disclosure of the information reasonably could be expected to impede the effectiveness of DoD's future interrogation activities, circumvent the United States' counterterrorism efforts, and damage the national security.  *Id.*

The same information is also properly withheld under FOIA Exemption 2 (high), which exempts from disclosure the internal practices and procedures of an agency if the disclosure would risk circumvention of the agency's law enforcement function.  *See, e.g.*, *Cooker v. ATF*, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (withholding of portions of Bureau of Alcohol, Tobacco and Firearms manual which referred to investigative techniques proper under Exemption 2 (high) where agency affidavit stated that their release "would benefit those attempting to violate the law

and avoid detection"); *Blanton*, 63 F. Supp. 2d at 43 (interpreting the reference to circumvention

of agency regulation in Exemption 2 to cover circumvention of an agency's law enforcement

function). In addition to the risk of circumvention of DoD's counterterrorism efforts discussed

above, Rear Admiral Buzby determined that releasing the dates of the interrogations could also

allow a person to connect the interrogation dates with major events and/or disturbances in the

detention camp, permitting knowledgeable persons to potentially devise measures to degrade the

protection of the camp personnel and the detainees. 2d Buzby Decl. ¶ 7. For example, the dates

of detainees' interrogations might reveal how DoD reacted to a certain disturbance in the camp

given its selection of certain detainees to interrogate, which detainees might have cooperated, and

from whom relevant information might have been obtained.

      As for the withholding of dates contained in the intelligence records, including the dates

the records were created, under Exemption 2 (high), Rear Admiral Buzby explained that the

disclosure of these dates would reveal internal procedures relating to the handling and

transmission of sensitive information, particularly the timeliness and/or the timelines of such

transmissions. *Id.* ¶ 8. It would reveal, for example, internal guidelines relating to the sequence

in which intelligence and/or other sensitive information is shared within DoD and among

government agencies. *Id.* It would also reveal the length of time it takes DoD to process

intelligence information and the timelines relating to U.S. counterterrorism operations. *Id.* Rear

Admiral Buzby accordingly determined that disclosure of the information would enable

knowledgeable persons to better analyze DoD's intelligence and counterterrorism activities, thus

risking circumvention of DoD's counterterrorism efforts. *See id.*

      For these reasons, this Court should deny plaintiff's request that DoD be compelled to

disclose the dates withheld from the responsive records.

    **C.**    **Plaintiff Is Not Entitled to the Personally Identifying Information of DoD Personnel.**

In its opening brief, DoD established that it was entitled to withhold the names, military ranks, and other personally identifying information of DoD personnel under Exemptions 3 and 6. Specifically, DoD demonstrated that 10 U.S.C. § 130b, which authorizes the Secretary of Defense to withhold personally identifying information regarding "any member of the armed forces assigned to an overseas unit, a sensitive unit, or a routinely deployable unit," 10 U.S.C. § 130b(a)(1), applies to withhold the identities of JTF-GTMO personnel, who are, by definition, members of an overseas unit.

Plaintiff agrees that 10 U.S.C. § 130b is an Exemption 3 statute, but argues that it does not protect the disclosure of those JTF-GTMO personnel who are no longer at Guantanamo or in the military. Plaintiff's argument has no merit. The personally identifying information is contained in the responsive records precisely because those DoD personnel were, at the times relevant to the documents, stationed in Guantanamo and acting in their official capacities as members of an overseas unit. Clearly, the privacy concerns that led Congress to permit the Secretary of Defense to categorically withhold their identities do not evaporate simply because some of those DoD personnel are no longer deployed there. The risk of harassment and other privacy concerns that stem from those individuals' tour of duty at Guantanamo remain even after the conclusion of their tour of duty. More importantly, the calculation of those privacy concerns has already been made by Congress; as the D.C. Circuit has noted, Exemption 3's "unmistakable thrust" is to assure that basic policy decisions on governmental secrecy be made by the

Legislative branch.  *Ass'n of Retired R.R. Workers, Inc. v. Railroad Retirement Bd.*, 830 F.2d

331, 333 (D.C. Cir. 1987).  Thus, "once a court determines that the statute in question is an

Exemption 3 statute, and that information requested at least arguably falls within the statute,

FOIA *de novo* review normally ends."  *Aronson v. I.R.S.*, 973 F.2d 962, 967 (1st Cir. 1992).

In this regard, plaintiff's reliance on *O'Keefe v. Department of Defense*, 463 F. Supp. 2d

317, 325 (E.D.N.Y. 2006), is misplaced.  In that case, DoD sought to withhold the names and

phone numbers of DoD personnel contained in an investigative report generated by the United

States Central Command, which is headquartered at MacDill Air Force Base in Tampa, Florida.

The court found the withholding proper under Exemption 6 (because the disclosure would

constitute a clearly unwarranted invasion of those personnel's privacy, *id.* at 328), but not under

Exemption 3 because there was no showing in that case that those personnel were stationed with

a routinely deployable unit or any other unit covered by 10 U.S.C. § 130b.  *Id.* at 325.   Here, in

contrast, there can be no dispute that JTF-GTMO personnel fall within the ambit of 10 U.S.C.

§ 130b.

In any event, DoD has also shown that the withheld personally identifying information of

JTF-GTMO personnel as well as other DoD personnel properly fall within Exemption 6 because

those individuals' privacy and personal safety interests outweigh the public's interest in

disclosure.  Buzby Decl. ¶ 54.  Rear Admiral Buzby determined that the disclosure of

information identifying those individuals would constitute a clearly unwarranted invasion of their

privacy particularly because they were involved in the detention of enemy combatants linked to

al Qaeda , the Taliban, or their associated forces during wartime.  *Id.*; *see also Long v. OPM*, No.

5:05-CV-1522, 2007 U.S. Dist. LEXIS 72887, at *47-48 (N.D. N.Y. Sept. 30, 2007)

(withholding of DoD employee names and duty stations under Exemption 6 proper because disclosure could allow enemies of the United States to target DoD employees performing specific missions for harassment or attack); *Schwarz v. Department of Treasury*, 131 F. Supp. 2d 142, 150 (D.D.C. 2000) (withholding of identities of certain federal employees proper because "[d]isclosure of the these names could subject the individuals to unwanted harassment but would not contribute to the public understanding of government functions"); *cf. Halpern v. F.B.I.*, 181 F.3d 279, *296 -297 (2d Cir. 1999) (withholding under Exemption 7(C); recognizing that "government employees and officials, particularly law enforcement personnel have privacy interests to the extent that revelation of their identities could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs") (internal quotation marks omitted).

Plaintiff argues that DoD's justification does not apply to "those people who devised, approved, and implemented the abuse and torture of [him]." Pl's Opp'n at 31. This argument, again, invites the Court to determine the legality of DoD's interrogation and treatment of plaintiff, which cannot be addressed in this forum. Instead, the relevant question here is whether the public's interest in the disclosure of DoD employees' personally identifying information outweighs the privacy interests of those personnel. As Rear Admiral Buzby determined, the public's interest in the information is nominal because the information would not inform the public about how DoD performed its statutory duties. Buzby Decl., ¶ 54. Plaintiff has not shown otherwise, and his citation to *National Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004), does not help him. *Favish* holds that an asserted public interest in uncovering official misconduct may be sufficient to outweigh a claim of privacy interest, provided that the requester

13

first produces sufficient evidence to warrant a belief by a reasonable person that the alleged

Government impropriety might have occurred.  *Id.* at 174.  The information at issue in *Favish* –

the death-scene photographs of Vincent Foster, deputy counsel to the President, taken by park

police investigators – allegedly could have helped in "uncovering deficiencies or misfeasance in

the Government's investigations into Foster's death," thus shedding light on whether

"investigative agency or other responsible officials acted negligently or otherwise improperly in

the performance of their duties."  *Favish*, 541 U.S. at 173.

Here, in contrast, there is "no nexus" between the identities of DoD personnel and "the

asserted public interest that would be advanced by disclosure."  *Id.* at 172-73.  The disclosure of

DoD personnel's personally identifying information would not shed light on how DoD conducted

its detainee interrogation and detention operations, beyond what is already publicly available

through DoD's various investigative reports concerning those operations.  *See Reporters Comm.*,

489 U.S. at 773 (information that does not directly reveal the operations or activities of the

federal government "falls outside the ambit of the public interest that the FOIA was enacted to

serve"); *see also Long*, 2007 U.S. Dist. LEXIS 72887, at * 56 (N.D. N.Y. Sept. 30, 2007)

(withholding of DoD employee names and duty stations under Exemption 6 proper because,

among other things, such information "does not relate to the employee's performance of public

duties"); *Center for Public Integrity v. OPM*, Civ. No. 04-1274, 2006 WL 3498089, at *5

(D.D.C. Dec. 4, 2006) (finding the link between the names and duty stations of various federal

employees and "the potential illumination of agency action" "too attenuated"); *Voinche v. FBI*,

940 F. Supp. 323, 330 (D.D.C. 1996) ("There is no reason to believe that the public will obtain a

better understanding of the workings of various agencies by learning the identities of [various

14

federal employees] . . ."); *Judicial Watch, Inc. v. Department of Commerce*, 337 F. Supp. 2d 146, 177 (D.D.C. 2004) (same).

This is true even if some of those reports did find misconduct on the part of DoD personnel; the Schmidt-Furlow Report, for example, found three unauthorized interrogation acts (out of some 24,000 interrogations conducted over a three year period) committed by DoD personnel vis-a-vis certain unspecified detainees (in addition to finding that the Commander of JTF-GTMO failed to monitor the interrogation of one high value detainee in late 2002). Assuming there is a link between any of those non-high level personnel in question and the plaintiff, those personnel's privacy interests are not diminished simply because they were the subject of internal investigations. To the contrary, the disclosure of their identities potentially could subject them to even greater embarrassment and harassment than if they are simply known to be associated with the detention and interrogation of enemy combatants linked to al Qaeda, the Taliban or their associated forces. *See Forest Serv. Employees for Envtl. Ethics v. U.S. Forest Serv.*, No. 05-6015, 2005 WL 3488453, at *3-4 (D. Or. Dec. 21, 2005) (protecting identities of low-level and mid-level employees facing discipline, because release "could subject them to embarrassment, shame, stigma and harassment," despite publicity given to fatalities caused by forest fire); *cf. Kimberlin v. Department of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (disclosure of the investigative file of Department of Justice, Office of Professional Responsibility regarding a staff-level government lawyer in connection with his possibly unauthorized and perhaps illegal release of information "would occasion an invasion of [that lawyer's] privacy disproportionate to, and therefore 'unwarranted' by, such insight as the public would gain into 'what the Government is up to,'" even though that lawyer was admittedly

15

disciplined) (quoting *Reporters Comm.,* 489 U.S. at 750).[4]

In sum, DoD's withholding of DoD personnel's personally identifying information is proper under Exemptions 3 and 6.

### D.    DoD Has Properly Withheld Intelligence Data Concerning the Dates and Circumstances of Plaintiff's Capture and Transfer to Guantanamo.

Plaintiff also challenges DoD's withholding of intelligence data relating to the dates and circumstances of plaintiff's capture and transfer to Guantanamo, which DoD has withheld under Exemption 1.  Rear Admiral Buzby determined that the information is properly classified because release of the information, if pieced together with other, similar information about other detainees, would provide a composite picture of how detainees come into U.S. custody and the likely timing and/or the routes of detainee movements to/or between facilities, including Guantanamo, thus revealing the Government's detention and intelligence operations.  Buzby Decl., ¶ 26c; *see also CIA v. Sims*, 471 U.S. 159, 178 (1985) ("what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item in its proper context").  It could also be used to discern sources of

---

[4] Notably, even assuming that disclosure of DoD personnel's identifying information would help plaintiff identify who he believes might have mistreated him, that does not satisfy the public interest requirement for disclosure.  The law is clear that the disclosure must benefit the public overall and not just the requester himself.  *North v. Walsh*, 881 F.2d 1088, 1096-1097 (D.C. Cir. 1989) ("[t]he plaintiff's rights in a FOIA action do not depend on his or her identity" because FOIA's "'sole concern is with what must be made public or not made public'") (quoting *Reporters Comm.,* 489 U.S. at 772); *Reporters Comm.,* 489 U.S. at 772 (recognizing that "the particular purpose for which the document is being requested" is not relevant to the determination of whether disclosure is warranted under the FOIA).  This is true even where the requester's liberty interest is at stake.  *See, e.g., Engelking v. Drug Enforcement Admin.,* 119 F.3d 980, 980-81 (D.C. Cir. 1997) (plaintiff, who was serving life sentence, sought exculpatory information under FOIA; holding that "a requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA").

intelligence and cooperating individuals and entities, thus having a chilling effect on such sources' future assistance and cooperation. Buzby Decl., ¶¶ 27-32. Indeed, information about how specific detainees came into U.S. custody potentially could threaten relations with allies who have provided material assistance in the capture of enemy combatants, which could result in those allies' refusal to provide further support to the United States' counterterrorism efforts. *See* Executive Order 12958, as amended, § 1.4(d). For example, the dates and circumstances of a detainee's capture, if pieced together with events of U.S. military operations in a particular locality, could allow knowledgeable persons to identify the intelligence sources and/or foreign allies and discern their assistance to the United States.

Plaintiff makes no showing why Rear Admiral Buzby's determination of likely damage to national security is implausible or illogical. Instead, plaintiff claims that his "extraordinary rendition" – allegedly from Mauritania to Jordan, then to Bagram, Afghanistan, and finally to Guantanamo – violates both "American policy and international law" and thus, the information must have been withheld by DoD to conceal those violations. Pl's Opp'n at 33. This type of conclusory allegation of government misconduct is insufficient to rebut DoD's facially reasonable concerns regarding potential damage to the national security. Nor is this action brought under the FOIA the appropriate forum to address plaintiff's challenge to the legality of his capture and transfer to Guantanamo. More importantly, even assuming the merits of plaintiff's claim that his capture and transfer violate certain laws, that does not mean that DoD's national security concerns about the disclosure are unfounded. As noted before, the D.C. Circuit has said that "in the FOIA context, [the D.C. Circuit] ha[s] consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake

17

searching judicial review." *See Center for Nat'l Sec. Studies*, 331 F.3d at 926; *see also id.* 927 (court cannot "conceive of any reason to limit deference to the executive in its area of expertise to certain FOIA exemptions so long as the government's declarations raise legitimate concerns that disclosure would impair national security").

For these and other reasons discussed above, plaintiff has failed to rebut DoD's claims of exemptions for the challenged withholdings.

## II.     PLAINTIFF HAS FAILED TO REBUT DEFENDANT'S SHOWING THAT IT MADE A GOOD FAITH EFFORT TO CONDUCT A REASONABLE SEARCH

In moving for partial summary judgment, DoD established that the Southern Command made a good faith effort to conduct a search reasonably calculated to uncover all relevant documents. The Southern Command had determined that any responsive records within the command most likely would be found in JTF-GTMO, whose mission is to conduct detention and interrogation operations and exploit intelligence in support of the Global War on Terror. *See* Buzby Decl., ¶¶ 1, 5. The commander for JTF-GTMO in turn tasked <u>all</u> divisions within JTF-GTMO most likely to have responsive records to conduct manual and/or electronic searches of both classified and unclassified records. *Id.* ¶ 6. While a total of four different JTF-GTMO divisions searched for responsive records, the vast majority of the responsive records was found in the records of the Joint Intelligence Group ("JIG"). *See id.* ¶¶ 7-10. The JIG, the division responsible for interrogations of detainees, was also the division tasked to search for "interrogations logs," *id.* ¶ 11, when plaintiff's counsel specifically requested that DoD produce "interrogation logs" such as the one published in the Time Magazine allegedly relating to another detainee. *See Extracts from an Interrogation Log*, Time Magazine (June 12, 2005), available at

http://www.time.com/time/magazine/article/0,9171,1071202.00. html.

Plaintiff challenges the adequacy of DoD's search, pointing to the JIG's ultimate failure to find any "interrogation logs." According to plaintiff, such logs must exist because as noted above, excerpts of another detainee's "interrogation log" had been published by the media and because the Schmidt-Furlow Report supposedly discussed such logs relating to plaintiff. Plaintiff also complains that "DoD has produced no evidence that it searched any other components of the Southern Command." Pl's Opp'n at 12-13.

As an initial matter, "[t]here is no requirement that an agency search every record system." *Oglesby v. Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Marks v. United States Department of Justice,* 578 F.2d 261, 263 (9th Cir.1978) (no requirement that an agency search every division or field office on its own initiative in response to a FOIA request when the agency believes responsive documents are likely to be located in one place). DoD determined that "interrogation logs" relating to plaintiff, if they exist, would most likely be found in one place, the record system of the JIG, because the JIG has the primary responsibility for conducting detainee interrogation operation and detainee assessments and its mission is to collect and exploit intelligence in support of the government's effort to combat terrorism. *See* Buzby Decl., ¶¶ 9, 11. The JIG's manual and electronic search uncovered no "interrogation logs" such as the one published in the Time Magazine that allegedly related to another detainee. *Id.* ¶ 11. As for the Schmidt-Furlow Report's references to "interrogation logs," DoD cannot confirm or deny whether those logs relate to plaintiff because to reveal this information might link the interrogation methods discussed in the report to plaintiff or other detainees. And, as discussed before, such information is classified. *Cf. Students Against Genocide v. Department of State*, 257

19

F.3d 828, 834 n.9 (D.C. Cir.  2001) (agency refusal to confirm or deny existence of record

appropriate "'where an acknowledgment that records exist would provide the requester with the

very information the exemption is designed to protect'") (quoting *Nation Magazine v. U.S.

Customs Serv.,* 71 F.3d 885, 894 n. 8 (D.C. Cir. 1995)).  While DoD cannot confirm or deny

whether it has searched the record system containing documents relating to the Schmidt-Furlow

investigation, DoD believes that it has met the legal standard regarding the adequacy of its

search.  If plaintiff wishes to file a FOIA request seeking documents relating to the Schmidt-

Furlow investigation generally, he is free to do so.  It should be noted, however, that DoD has

already made available all nonexempt, unclassified documents relating to the Schmidt-Furlow

investigation in its electronic FOIA reading room (http://www.dod.mil/ pubs/foi/detainees

/other_related.html).  *See* http://www.dod.mil/pubs/foi/detainees/SchmidtFurlowEnclosures.pdf.

     In any event, as noted above, JTF-GTMO has produced all responsive, non-exempt

documents it found relating to the interrogation of Slahi, including summary interrogation

reports, interrogation plans, and memoranda for record discussing his interrogations.  Even

assuming the existence of additional documents relating to plaintiff's interrogation that were not

produced, DoD's search is not presumed unreasonable simply because it fails to produce all

responsive material.  *See Meeropol v. Meese,* 790 F.2d 942, 952-53 (D.C. Cir. 1986); *Miller v.

Department of State,* 779 F.2d 1378, 1384-85 (8th Cir. 1985); *Perry v. Block,* 684 F.2d 121, 128

(D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and

that no other relevant documents could possibly exist)*.*  Again, "the issue to be resolved is not

whether there might exist any . . . documents possibly responsive to the request, but rather

whether the search for those documents was adequate."  *Weisberg v. Department of Justice*, 745

F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotations omitted); *Oglesby*, 920 F.2d at 68 (appellant's "speculation" and "hypothetical assertions" that certain records must have been created relating to a meeting are insufficient to raise a material question of fact with respect to the adequacy of the agency's search). Rear Admiral Buzby stated that he is aware of no remaining places within JTF-GTMO reasonably likely to have records responsive to plaintiff's request. *Id.* ¶ 6. This court must accord the declaration "a presumption of good faith" which cannot be rebutted by plaintiff's "purely speculative claims about the existence and discoverability of other documents." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

For these same reasons, plaintiff's speculation that there must be documents relating to investigations of his allegations of mistreatment and more responsive memoranda for record is insufficient to rebut DoD's showing that its search was reasonably adequate. Specifically, plaintiff's counsel asserts that she is unable to locate two memoranda for record, dated August 2, 2003 and September 8, 2003, described on page 25 of the Schmidt-Furlow Report. *See* Pl's Opp'n at 13; Ex. J (Duncan Decl. ¶¶ 6-7). As already discussed above, DoD cannot confirm or deny whether those two memoranda for record relate to plaintiff because it would reveal the very information sought to be protected. And, any unclassified, nonexempt documents underlying the Schmidt-Furlow investigation are, in any event, available to plaintiff in DoD's FOIA electronic reading room.

In sum, plaintiff has not rebutted DoD's demonstration that it made a good faith effort to conduct a reasonably adequate search.

**CONCLUSION**

21

For all the foregoing reasons, this Court should grant DoD's motion for partial summary judgment.

Dated: December 14, 2007                     Respectfully submitted,

                                             JEFFREY S. BUCHOLTZ
                                             Acting Assistant Attorney General,
                                             Civil Division

                                             JEFFREY A. TAYLOR
                                             United States Attorney

                                             ELIZABETH J. SHAPIRO
                                             Assistant Branch Director

                                             _____/s/ Jean Lin_____
                                             JEAN LIN
                                             Federal Programs Branch, Civil Division
                                             United States Department of Justice
                                             20 Massachusetts Ave., N.W.
                                             Washington, D.C.  20530
                                             Tel: (202) 514-3716
                                             Attorneys for Defendant