**Exhibit 9**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOHAMMEDOU OULD SLAHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 06-CV-0597 (JR) |
| v. | ) | |
| | ) | DECLARATION OF |
| | ) | SANDRA HODGKINSON |
| UNITED STATES DEPARTMENT OF | ) | |
| DEFENSE, | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to 28 U.S.C. §1746, I, Sandra Hodgkinson, declare as follows:

1.  I am the Deputy Assistant Secretary of Defense for Detainee Affairs (DASD-DA) in the Office of the Under Secretary of Defense for Policy, Department of Defense ("DoD"). As the DASD-DA I am responsible for providing policy advice to the Under Secretary of Defense on matters regarding detainees in DoD custody. I have held this position since July of 2007. As such, I supervise the employees and the work product of this office.

2.  In my capacity as DASD-DA, I am familiar with Office of Detainee Affairs' (ODA) procedures for responding to requests for access to records and information in ODA's custody and control pursuant to the Freedom of Information Act (FOIA) and Executive Order (EO) 12958, as amended. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations made in accordance therewith.

## Purpose of this Declaration

3. The purpose of this declaration is to describe the search for documents responsive to the FOIA request filed by Sylvia Royce, the attorney for Mohammedou Ould Slahi ("plaintiff"), on May 26, 2005, and to explain our reasons for withholding information from responsive records pursuant to FOIA exemptions 1, 2, 3, 5, and 6, 5 U.S.C. § 552(b)(1), (2), (3), (5), and (6). Information that reasonably can be segregated has been produced.

## Search for Responsive Documents

4. Plaintiff is a foreign national who is currently detained by DoD at the Guantanamo Bay Naval Base as an enemy combatant. In a letter dated May 26, 2005, plaintiff's counsel submitted a FOIA request to DoD's Office of Freedom of Information ("OFOI") seeking "records relating to Mohamedou Ould Slahi aka Mohammedou Ould Salahi, born in Mauritania in approximately 1970." The request for records includes "memoranda, inter-agency communications, case summaries, notes, indexes, jottings, message slips, letters, facsimile transmissions, diaries, E-Mails and calendars." On July 3, 2007, OFOI tasked ODA to conduct a search for documents responsive to the FOIA request filed by plaintiff's counsel.

5. In accordance with established office practice, it is my understanding that ODA conducted a search in July 2007 to locate responsive documents in ODA's records. All employees were tasked to conduct manual and electronic searches for both classified and unclassified records generated by this office, and both variants of plaintiff's name were used in conducting the search. The search yielded four documents, consisting of a total of 17 pages that were created by ODA.[1] I am not aware of any other responsive documents.

---

[1] Responsive ODA documents released electronically to plaintiff's counsel were labeled "Slahi-ODA-2575-2647-Final." However, only the first 17 pages (those numbered 2575-2591) of this document originate with ODA. The rest originate with JTF-GTMO.

6. Additionally, on or about April 4, 2008, three documents totaling four pages were referred to ODA by OFOI. My understanding is they were located by the Office of Military Commissions when it conducted its search for responsive documents. These documents were created by ODA and they are also addressed below.

### Justification for Withholding DoD's Intelligence Data, Assessments, Recommendations, and Conclusions Under FOIA Exemption (b)(1)

7. FOIA Exemption (b)(1) permits the withholding of information that concerns intelligence collection, the national security, or foreign policy that is in fact properly classified pursuant to EO 12958, as amended.

8. ODA has withheld intelligence data relating to, and assessments of, the plaintiff and pertinent recommendations and conclusions, which include information regarding detainees other than the plaintiff under Exemption (b)(1). This information is classified at the SECRET level and is specifically authorized to be kept secret in the interest of national security under by Section 1.4(a) and/or (c) of EO 12958, as amended. The pages that contain (b)(1) exemption of this kind are numbered 2580-2591, 3644-3645, and 3653-3654.[2]

9. In accordance with Section 1.1(a) of that EO, (1) this information has been classified by a prior commander of JTF-GTMO, who exercised original classification authority; (2) the information is owned, produced by and for, and is under the control of the United States government; (3) the information concerns "intelligence activities (including special activities), intelligence sources or methods, or cryptology;" and (4) the current Commander of JTF-GTMO maintains that classification and determined, for the reasons stated herein, that the disclosure of the information reasonably could be expected to result in serious damage to the national security, including our defense against transnational terrorism.

---

[2] Page 3653 contains information withheld in part under exemption (b)(1) as it contains the kind of information addressed by Section 1.4(c) of EO12958, as amended, not Section 1.4(a).

10. At the time of plaintiff's FOIA request, this analytic material was classified at the SECRET level through the action of the Commander of JTF-GTMO. I have consulted with JTF-GTMO and was informed that the intelligence data, assessments, recommendations, and conclusions withheld under FOIA Exemption (b)(1) are vital to DoD's evaluation of plaintiff's activities, and remain vital to its ongoing efforts to obtain intelligence on other individuals and organizations. The intelligence data, assessments, recommendations, and conclusions that appear in the documents pertain to individuals and organizations of intelligence interest, and reflect the relationships among individuals and organizations of intelligence interest. JTF-GTMO further advised me that disclosure of this information, especially in conjunction with disclosure of the specific intelligence data that is necessarily intertwined with them, would reveal how analysts evaluate intelligence information and the conclusions they reach. Such revelations would aid persons hostile to the United States in hiding their activities and thwarting the government's intelligence gathering, and severely harm the United States' ongoing efforts to gather intelligence critical to fighting the GWOT. The information therefore meets the requirements found in Executive Order 12958, Section 1.1(a)(4) for SECRET information.

11. In addition, some of the redacted material consists of information provided by a foreign government about the plaintiff. This information is contained on pages 2580-2591, 3644-3645, and 3654. At the time plaintiff made his FOIA request, the information in this category was classified at the SECRET level through the action of the Commander of JTF-GTMO. Upon our request, JTF-GMTO has determined that this information continues to warrant classification at the SECRET level, pursuant to EO 12958, as amended, Section 1.4(b) and (d), as it contains information that qualifies as "foreign government information" or information affecting the "foreign relations or foreign activities of the United States, including confidential sources."

Release of this information reasonably could be expected to result in serious damage to national security, including our defense against transnational terrorism.

### Justification for Withholding DoD's Intelligence
### Assessments, Recommendations, and Conclusions Under FOIA Exemption (b)(5)

12.  FOIA Exemption (b)(5) permits the withholding of inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency.  Exemption (b)(5) has been construed to exempt those documents or information normally privileged in the civil discovery context and includes material created during the predecisional deliberative process.  Exemption (b)(5) redactions made to withhold information protected by the Deliberative Process Privilege is contained on pages 2580 -2591.[3]

13.  The Deliberative Process Privilege protects the internal deliberations of members of the government by exempting from release assessments, recommendations, analysis, opinions, speculation, conclusions and other non-factual information prepared in anticipation of decision-making.  Privileged information withheld from the responsive records includes intra- or inter-agency deliberations regarding policy or future actions concerning treatment of detainees, including matters such as interrogation policies.  Disclosure of any of this deliberative information is likely to chill full, frank, and open internal discussions.

14. Some of the withheld information in the responsive documents found as a result of ODA's search constitutes assessments of the intelligence value.  This information is predecisional in nature.  Some of the information consists of recommendations made by prior Administrative Review Boards. The ARB is an administrative body comprised of DoD personnel that determines whether a detainee, such as the plaintiff, continues to present a threat and to what degree.  The ARB provides its assessments and conclusions to the Designated Civilian Official

---

[3] Exemption (b)(5) is not actually noted on the redacted pages released to plaintiff's counsel.

(DCO), who, in turn, uses this information to make a decision on whether DoD custody of a detainee should be continued, and, if not, whether a detainee should be transferred to the custody of another country, or released. This information is appropriately withheld under FOIA Exemption (b)(5) because its release would chill open and frank discussions and severely hinder DoD personnel in providing their candid assessments and recommendations regarding detainees such as the plaintiff to the DCO. The quality of decisions concerning the designation and disposition of particular detainees would unavoidably deteriorate as a result.

### Justification for Withholding of Intelligence Assessments and Conclusions Under FOIA Exemption (b)(2) (High)

15.   Though not identified on the redacted pages, the intelligence assessments and conclusions on pages 2580-2591, 3644-3645, and 3653-3654 are additionally withheld under FOIA Exemption (b)(2) (high) because their disclosure would reveal the internal guidelines followed by DoD in evaluating the intelligence value and threat level of individuals and organizations of intelligence interest, and thus risk circumventing U.S. counterterrorism efforts.

16. JTF-GTMO has advised me that an analyst's selection of, or emphasis on, particular intelligence data in their assessment would reveal what intelligence was important to the United States in assessing detainees such as the plaintiff, and by extension other individuals, as well as how the government analyzes intelligence in general. Individuals of intelligence interest could use this information to discern the guidelines used by JTF-GTMO and SOUTHCOM to make intelligence value and threat level assessments concerning Guantanamo detainees and others. Knowledge of those internal guidelines would reveal a critical aspect of DoD's intelligence activities and methods. This would aid persons hostile to the United States in hiding their activities and tailoring their behavior to thwart the government's intelligence gathering, and thus risk circumventing U.S. counterterrorism efforts.

## Justification for Withholding of Internment Serial Numbers
## Under FOIA Exemption (b)(2)(high)

17.  FOIA Exemption (b)(2) (high) exempts from disclosure the internal guidelines, rules,

practices and procedures of an agency if the disclosure would risk circumvention of the law.

Internment serial numbers, or "ISNs," are identifying numbers unique to a detainee, analogous to

a social security number.  A full ISN is a 12-digit alpha numeric identifier that incorporates

certain abbreviated information about the detainee.  DoD also uses shortened ISNs consisting of

3 or 4 digits to identify detainees.  The shortened ISNs are still unique to the detainee.

18.  The full ISN of plaintiff is found on several of the responsive documents.  The pages that

contain FOIA Exemption (b)(2) redactions are numbered 2580-2581, 2583-2584, 2587-2589,

2591, 3644, and 3653-3654.  On these pages, only the shortened ISN was produced and the other

digits and numbers comprising the full ISN were withheld under FOIA Exemptions (b)(1) and

(2) (high).   The full ISN is withheld under Exemption (b)(2) (high) as the non-numeric portion

of the full ISN contains information specific to the detainee that is used to identify certain

information pertinent to detainee operations and intelligence-gathering operations.  Furthermore,

the full ISN is often used in intelligence message traffic and reports to identify a particular

detainee as a source for information.  Disclosure of the full ISN to the public could allow persons

to potentially access information concerning detainees from DoD databases and other sources

and then cross-reference these detainee numbers with other information in the public domain to

identify specific detainees, DoD personnel associated with detainee operations and intelligence

gathering activities, and other individuals mentioned in other DoD documents.  Thus, access to

this information, much of it classified, would have the effect of impeding DoD detention and

intelligence gathering operations.

## Justification for Withholding Foreign Government Information Under FOIA Exemption (b)(3)

19. Some of the withheld information is exempt under FOIA Exemption (b)(3), 10 U.S.C. § 130c, which protects unclassified information provided to DoD by a foreign government or international organization in confidence and with the expectation that it will not be publicly released by DoD,. This information is contained on pages 2580-2591, 3644-3645, and 3654.

20. As part of ongoing intelligence gathering operations, DoD routinely solicits and receives information from foreign governments about detainees, including intelligence and law enforcement information. Such information is provided by the foreign governments n confidence and with the expectation that it will not be publicly released by DoD. Official public release of such information, in contravention of such expectations of confidentiality, would substantially impair DoD's ability to secure cooperation by foreign governments. Foreign governments will be less likely to cooperate with U.S. intelligence collection and other counterterrorism efforts if they cannot be confident that the information they provide will be safeguarded and remain confidential. Accordingly, the public release of this information under FOIA reasonably could be expected to result in serious damage to national security and the foreign relations of the United States.

## Justification for Withholding Personally Identifying Information of DoD Personnel Under FOIA Exemptions 3 and 6

21. FOIA Exemption (b)(3) permits the government to withhold information that is "specifically exempted from disclosure by statute." 10 U.S.C. § 130b authorizes the withholding of "personally identifying information regarding ... any member of the armed forces assigned to an overseas unit, ... or a routinely deployable unit." The information redacted pursuant to 10 U.S.C. § 130b is withheld because it identifies members of the armed forces assigned to overseas

units or routinely deployable units. The pages that contain those redactions are numbered 3653-3654.

22. FOIA Exemption (b)(6) permits the withholding of information that identifies DoD personnel. Such information was withheld on the pages numbered 2575-2577, 2579, 2586-2587, and 3653-3654. This exemption permits the government to withhold information about individuals in its files when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."

23. I have determined that the disclosure of DoD employees' personally identifying information contained in the responsive documents would constitute a clearly unwarranted invasion of the personal privacy of these individuals. These individuals have a legitimate privacy interest and personal safety interest that would be threatened if this information was publicly disclosed and there is no public interest in having this information disclosed. The public release of the names and other identifying information of DoD's personnel would not shed any light on how DoD performed its statutory duties relative to plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Date: ___7/31/08___          _____
                                        Sandra Hodgkinson

**Exhibit 10**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOHAMMEDOU OULD SLAHI                )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )
                                     )    Civil Action No. 06-CV-0597 (JR)
UNITED STATES DEPARTMENT OF          )
DEFENSE                              )
                                     )
                    Defendant.       )
                                     )
                                     )

### DECLARATION OF BRIGADIER GENERAL STEVEN A. HUMMER

I, Steven A. Hummer, pursuant to 28 U.S.C. § 1746, declare the following to be true and correct to the best of my knowledge:

1.      I am a Brigadier General in the United States Marine Corps. I am the Chief of Staff assigned to U.S. Special Operations Command (USSOCOM), Tampa, FL. I have been on active duty in the U.S. military for over 30 years and assumed my present duties in August 2007. As the Chief of Staff, USSOCOM, I perform a myriad of tasks including directing, managing, and monitoring staff actions directed to, internal to, and emanating from this headquarters.

2.      Through the exercise of my official duties, I am familiar with the subject of the present litigation. I make the following statements based both upon my personal knowledge and upon information I have received in my official capacity.

1

## Purpose of this Declaration

3..     The purpose of this declaration is to describe the search for documents responsive to the FOIA request filed by Sylvia Royce, the attorney for Mohammedou Ould Slahi ("plaintiff").

## Search for Responsive Documents

4.     Plaintiff's counsel submitted a FOIA request on May 26, 2005, requesting records relating to plaintiff.  In July 2007, the Department of Defense Office of Freedom of Information ("OFOI") tasked U.S. Special Operations Command with conducting a search and providing records responsive to this FOIA request.

5.     Subject matter experts assigned to USSOCOM searched all files within USSOCOM reasonably likely to contain information relating to the plaintiff, which included an electronic search of multiple unclassified and classified databases.  No responsive documents were found.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this  24th day of July, 2008, at Tampa, Florida.

STEVEN A. HUMMER
Brigadier General, U.S. Marine Corps
Chief of Staff
U.S. Special Operations Command

**Exhibit 11**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMEDOU OULD SLAHI,                          )
                                                )
                    Plaintiff,                  )
                                                )
                                                )
                                                )    Case Number: 06-CV-0597 (JR)
                                                )
                                                )
                                                )
                                                )
            v.                                  )
                                                )
UNITED STATES DEPARTMENT OF                     )
DEFENSE,                                        )
                                                )
                    Defendant.                  )
                                                )
                                                )
                                                )

        Pursuant to 28 U.S.C. § 1746, I, David D. Campbell, Judge Advocate General's Corps,

United States Navy, hereby state to the best of my knowledge that the following is true, accurate

and correct:

1. I am the Legal Advisor to the Office for the Administrative Review of the Detention of

Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba ("OARDEC"). OARDEC is an

organization within the Department of Defense ("DoD") that is responsible for conducting

several processes involving detainees at Guantanamo Bay, Cuba, including Combatant Status

Review Tribunals ("CSRTs") and Administrative Review Boards ("ARBs"). In my capacity as

the Legal Advisor to OARDEC, I serve as an advisor to the Director, Combatant Status Review

Tribunals.

1

2. I am familiar with the May 26, 2005 request of Ms. Sylvia Royce, counsel for Guantanamo detainee Mohammedou Ould Slahi ("Slahi" or "Plaintiff") filed pursuant to the Freedom of Information Act ("FOIA") for "records relating to Mohamedou Ould Slahi aka Mohammedou Ould Salahi," and with the documents located by OARDEC in response to that request. Unless otherwise indicated, the statements in this declaration are based upon my personal knowledge and information obtained by me in the course of my official duties.

3. The purpose of this declaration is to provide information concerning the searches undertaken by OARDEC in response to the FOIA request submitted by Ms. Royce, the processing of documents responsive to Plaintiff's FOIA request, and the justifications for withholding certain documents and information under FOIA.

## DETAINEE PROCESSES AT GUANTANAMO

4. The CSRT process was established in 2004, by order of the Deputy Secretary of Defense, as a fact-based proceeding to determine whether individuals detained by DoD at Guantanamo were properly classified as enemy combatants, and to permit each detainee the opportunity to contest his designation as an enemy combatant. In contrast, the ARB process assesses annually whether each detainee who had previously been determined by a CSRT to be an enemy combatant continues to pose a threat to the United States or its allies, or whether there are other factors bearing on the need for continued detention. Each CSRT and ARB panel is composed of three neutral commissioned military officers. The CSRT implementing regulation is available at http://www.defenselink.mil/news/Aug2006/d20060809CSRTProcedures.pdf, and the ARB implementing regulation is available at http://www.defenselink.mil/news/Aug2006/d20060809ARBProceduresMemo.pdf.

2

5. The CSRT panels were charged with making a final determination as to whether a particular detainee was properly designated an enemy combatant. In reaching this decision, the CSRT utilized primarily law enforcement and intelligence information and other data and assessments in the possession of the government.

6. In contrast to the CSRT panels, the ARB panels make only non-final, non-binding recommendations to a Designated Civilian Official ("DCO") regarding the disposition of the detainee, i.e., whether he should be released, transferred, or remain in DoD detention. The Deputy Secretary of Defense serves as the DCO in the ARB process.

7. To assist the ARB in making its recommendation to the DCO and to assist the DCO in making his ultimate decision, each agency and DoD component involved in the process makes its own assessments of, and recommendations concerning, particular detainees. These agencies and DoD components often included the Department of State ("DOS"), the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the U.S. Army Criminal Investigation Task Force ("CITF"), DoD's Office of Detainee Affairs ("ODA"), and Joint Task Force-Guantanamo ("JTF-GTMO"). These agencies and components may offer differing assessments and recommendations concerning particular detainees.

8. In addition, as in the CSRT process, pre-existing law enforcement and intelligence information, summaries and assessments are considered by the ARB in making its recommendations to the DCO, and by the DCO in making his decisions. After the ARB forwards its recommendation to the DCO, the DCO makes a determination as to whether to release, transfer, or continue to detain the individual. If the DCO determines that continued detention is warranted, the detainee will remain in DoD custody, and a new review date will be

3

scheduled to ensure an annual review of the detainee's status. If the DCO determines that a detainee should be transferred from Guantanamo, a diplomatic process is undertaken with the receiving country to obtain transfer assurances, and a further process of interagency consultation is undertaken. The transfer of the detainee does not take place until these processes are successfully completed.

9. As noted before, for both the ARB and the CSRT processes, information and documentation was received from a variety of DoD organizations and other agencies and reviewed by the CSRT and/or the ARB. These documents often contained classified or other sensitive information, including the various organizations' analyses of factual information, and their assessments and recommendations regarding the detainee. These documents were included as exhibits to the CSRT and ARB records. The information found in these exhibits was often quoted or otherwise incorporated into the decision of the CSRT or the recommendation of the ARB, creating a document that was derivatively classified based on the classification level of the information in the original documents.

### THE SEARCH FOR RESPONSIVE DOCUMENTS

10. Mr. Slahi is currently detained at Guantanamo. A CSRT was conducted for Mr. Slahi in December 2004, which concluded that Mr.Slahi was properly classified as an enemy combatant. Since then, Mr. Slahi also has had three ARBs (one in December 2005, one in October 2006, and one in December 2007). Following each of Mr. Slahi's ARBs, the DCO decided (in January 2006, January 2007, and January 2008) that Mr. Slahi should remain in DoD detention.

11. OARDEC is responsible for maintaining the official files of these proceedings. OARDEC maintains separate files for each CSRT and ARB proceeding.

12. On July 3, 2007, OARDEC was tasked by the DoD Office of Freedom of Information ("OFOI") to conduct a search for documents responsive to plaintiff's FOIA request. In response, members of OARDEC's legal staff identified and copied the official CSRT and ARB records of proceedings pertaining to Mr. Slahi, which are contained in OARDEC's files. OARDEC has no other files that are reasonably likely to contain information responsive to Plaintiff's FOIA request. In total, OARDEC found 537 responsive pages of documents.

13. For the CSRT and ARB documents that contain withholdings, they are annotated on the Vaughn index: ARB Round 1 (which includes the CSRT) (3138-3237), ARB Round 2 (3238-3269), and the CSRT (3271-3295). ARB Round 3 is not addressed in this declaration because it occurred after OARDEC's search and production of responsive documents.

14. The official records of Mr. Slahi's CSRT and ARB proceedings are very similar in format. They contain the following categories of documents: report summarizing the classified basis for the tribunal's decision or recommendation; report summarizing the unclassified basis for the CSRT's decision or the unclassified evidence presented to the ARB; memorandum by a legal advisor assessing the legal sufficiency of either the CSRT or the ARB; classified and unclassified exhibits; and transcript of detainee's testimony at the proceeding. In addition, records of Mr. Slahi's ARB proceedings also contain memoranda reflecting the DCO's decisions; information provided to the ARB Round 2 by Mr. Slahi's counsel; and other information that concerns or refers to whether Mr. Slahi should be released or continued to be detained.

## PROCESSING OF RESPONSIVE DOCUMENTS

15. Most of the documents identified as responsive contain information that originated with components of DoD other than OARDEC, or with other agencies of the United States government. Only approximately 138 pages of the responsive documents located by OARDEC originated with OARDEC. Where information originated with other components and agencies, the information was referred to the originating component or agency for classification review, as required by EO 12858, and for a determination concerning release under FOIA.

16. During this referral process, the documents identified as responsive to Plaintiff's FOIA request were reviewed line-by-line and document-by-document to achieve maximum disclosure consistent with the provisions of FOIA. This review included a determination for each document withheld in part or in its entirety that no further information could be released without risk of disclosure of information protected and exempted from disclosure under one or more FOIA provisions. The remainder of this declaration and accompanying Vaughn index set forth the justifications for the withholding of documents in part or in their entirety pursuant to FOIA Exemptions 1, 2, 3, 5 and 6.

**Documents Containing Classified Information Withheld Under Exemption 1.**

17. Certain information was withheld pursuant to Exemption 1 because the information was classified by other agencies and DoD components. Upon our information and belief, this information remains classified pursuant to an Executive Order in the interest of national defense or foreign policy (See Executive Order 12958, as amended, and DoD Regulation 5200.1-R).

6

18. The pages that contain Exemption 1 withholdings are listed in the following chart:

| | |
|---|---|
| 3139-3140 | Review |
| 3150 | Summary |
| 3151-3153 | Summary |
| 3154 | Summary |
| 3156-3165 | Record of Proceedings |
| 3199-3200 | Summary |
| 3202-3211 | Redacted |
| 3219 3223 | Summary |
| 3224-3234 | Statement |
| 3236-3237 | Exhibit List |
| 3249-3257 | Review Board Decision |
| 3261-3268 | Redacted |
| 3277-3278 | Summary |
| 3280-3281 | Redacted |
| 3282-3292 | Statement |
| 3294 | Summary |

**Documents Containing Classified Information Withheld Under Exemption 2**

18.  Two documents contained redactions under Exemption 2.  Specifically, phone numbers were

redaction from 3275 and 3217.  Exemption 2 allows redaction of predominantly internal

information which is of trivial nature and not in the public interest.

**Names of U.S. Government Personnel
Withheld Under Exemptions 3 and 6**

19.  10 U.S.C. § 130b authorizes the Secretary of Defense to withhold personally identifying

information regarding "any member of the armed forces assigned to an overseas unit, a sensitive

unit, or a routinely deployable unit."  10 U.S.C. § 130b(a)(1).  The names of DoD personnel

withheld under Exemption 3 are those who were deployed overseas to OARDEC Forward in

Guantanamo Bay Cuba.

20.  OARDEC has also withheld DoD personnel's personally identifying information under

Exemption 6 because those individuals' privacy and personal safety interests outweigh the

public's interest in disclosure.  The disclosure of information identifying those individuals would

constitute a clearly unwarranted invasion of their privacy particularly because they were involved

in the detention of enemy combatants linked to al Qaeda , the Taliban, or their associated forces

during wartime.  The disclosure of this information could subject these DoD personnel or their

family to unwanted personal attention, harassment or even physical harm.  On the other hand,

there is no legitimate public interest in the disclosure of such information because the

information would not inform Mr. Slahi or the general public about how DoD performed its

statutory duties.

8

21. The pages that contain Exemptions 3 and 6 withholdings are listed in the following chart.

| 3138 | Assessment |
|------|------------|
| 3139-3140 | Review |
| 3141-3142 | Assessment |
| 3143 | Memo |
| 3144 | Notification |
| 3145-3148 | Election Form |
| 3151-3153 | Summary |
| 3156-3165 | Record of Proceedings |
| 3166-3198 | Summary |
| 3214-3215 | Review |
| 3216 | Appointment Letter |
| 3218 | Review Cover Sheet |
| 3219-3223 | Summary |
| 3224-3234 | Statement |
| 3235 | Election Form |
| 3238 | Assessment |
| 3239-3240 | Review |
| 3241 | Assessment |
| 3242 | Memo for the Record |
| 32 43 | Notification |

9

| 3244-3245 | Election Form |
|-----------|---------------|
| 3249-3257 | Review Board Decision |
| 3269-3270 | Assessment |
| 3274 | Appointment |
| 3276 | Report Cover Sheet |
| 3277-3279 | Summary |
| 3280-3281 | Redacted |
| 3282-3292 | Statement |
| 3293 | Election Form |
| 3295 | Review |

### ARB Documents Containing Material Protected by the Deliberative Process Privilege

22. Certain information was withheld from the ARB documents under the deliberative process privilege pursuant to Exemption 5. These withholdings include assessments, recommendations, and opinions (including the recitations and summaries of such assessments, recommendations and opinions) regarding the disposition of Mr. Slahi provided by various DoD components and other agencies to the ARBs.  For example, the Office of Detainee Affairs and OARDEC both provided assessments of Mr. Slahi's intelligence value and threat level, and recommendations regarding his disposition, to the ARBs for their consideration in formulating recommendations to the DCO.  The Legal Advisors to OARDEC provided opinions with regard to the legal sufficiency of the ARB proceedings.  Other agencies, such as the FBI, also provided assessments

10

and recommendations regarding Mr. Slahi's disposition to the ARBs. The ARBs, in turn, provided assessments of Mr. Slahi's intelligence value and threat level, and recommendations regarding his disposition, to the DCO for his consideration in deciding whether to release, transfer or continue to detain Mr. Slahi.

23. These assessments and disposition recommendations were predecisional and were integral to DOD's decision-making process regarding whether to release, transfer or continue to detain Mr. Slahi through the ARB process. To publicly release this information would discourage open and frank discussions between and among these various organizations and components, the ARBs, and the DCO. The intra- and inter-agency assessments and recommendations were provided to the ARBs and the DCO for their consideration in making recommendations (in the case of the ARBs) or final decisions (in the case of the DCO) regarding the disposition of particular detainees. If these assessments and recommendations are made public, it would have a chilling effect on the organizations and components that are part of the ARB review process. The DoD components and other U.S. government agencies that participate in the ARB process must be able to engage in open and frank discussions with regard to detainee matters, both internally and with each other, as reflected by the contents of these documents. Release of the withheld information would seriously erode the necessary free exchange of information within and between the ARBs, the DCO, and the DoD components and other U.S. government agencies participating in the ARB review process.

11

24. Documents that contain withholdings under the deliberative process privilege are listed in the following chart:

| 3138 | Assessment |
|------|------------|
| 3141-3142 | Assessment |
| 3151-3153 | Summary |
| 3156-3165 | Record of Proceedings |
| 3219-3221 | Summary |
| 3238 | Assessment |
| 3241 | Assessment |
| 3249-3257 | Review Board Decision |
| 3270 | Assessment |
| 3277-3279 | Summary |

### ARB Documents Containing Legal Advice

25. In addition to being protected by the deliberative process privilege pursuant to Exemption 5, certain documents in the ARB records contain confidential communications between the ARBs and the DCO and their attorneys and are therefore protected by the attorney-client privilege pursuant to Exemption 5. These documents include two memoranda addressed to the DCO and prepared by the military attorneys assigned to serve as the Legal Advisors to OARDEC. (3139-3140; 3239-3240). For each of Mr.Slahi's ARBs, these attorneys prepared memoranda that provided their opinions regarding the "legal sufficiency" of the ARB proceedings. The portions

that were withheld from these memoranda consist of the attorneys' specific legal opinions

regarding aspects of the ARB proceedings.


        I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2008.

                David D. Campbell, CDR, JAGC, USN

**Exhibit 12**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMEDOU OULD SLAHI,        ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| ) | Civil Action No. 06-CV-0597 (JR) |
| v.     ) | |
| ) | DECLARATION OF |
| ) | <u>LESLIE LAWRENCE SPANHEIMER,</u> |
| ) | <u>COMMANDER, UNITED STATES NAVY</u> |
| ) | |
| ) | |
| UNITED STATES DEPARTMENT OF     ) | |
| DEFENSE,     ) | |
| ) | |
| Defendant.     ) | |
| ) | |

Pursuant to 28 U.S.C. §1746, I, COMMANDER LES SPANHEIMER declare as follows:

1. I am the Deputy Chief of the Information Management Division (IMD), Joint Secretariat, Directorate of Management, the Joint Staff. From April 27, 2001 to September 16, 2007, I was Acting Chief of the IMD. In that capacity I managed the Freedom of Information Act (FOIA) Program, Records Management Program, Research and Archiving Program and the Joint Staff Declassification Project. The Joint Staff is composed of officers from the Army, Navy and Marine Corps, and Air Force, and assists the Chairman of the Joint Chiefs of Staff in preparing strategy for and directing unified combatant forces, and for integrating them into an efficient team of land, naval, and air forces. The statements made herein are based on my personal knowledge, upon information made available to me in my official capacity and upon determinations made in accordance with applicable regulations and directives.

2.  As part of managing the Freedom of Information Act Program, I was responsible for overseeing the searches of Joint Staff corporate records and the identification of documents potentially responsive to particular FOIA requests.  I am familiar with Ms. Sylvia Royce's ("plaintiff's counsel") FOIA request of May 26, 2005 seeking "records relating to Mohamedou Ould Slahi aka Mohammedou Ould Salahi, born in Mauritania in approximately 1970."  On July 9, 2007, the Joint Staff was tasked to conduct a search for documents responsive to that FOIA request.

3.  At my direction, my staff conducted an electronic and manual search for documents in the possession of the Joint Staff. The search and subsequent document review were conducted by subject matter experts on the Joint Staff, from the J-5 Strategic Plans and Policy Directorate, Detainee Affairs Division.

4.  The search yielded four documents that were responsive to the plaintiff's FOIA request.  They are Bates numbered 2550-2558 and 3296-3301.  None of the four documents were created by the Joint Staff.  On September 10, 2007, after making recommended redactions, we forwarded the four documents to the Department of Defense ("DoD"), Office of the Freedom of Information for referral to the originating DoD components.

4.  In the process of preparing this declaration, an additional search was conducted of what are typically called the "Top Five Records."  These are the files of the five most senior members of the Joint Staff (the Chairman of the Joint Chiefs, the Vice Chairman, the Assistant to the Chairman, the Director of the Joint Staff, and the Vice Director of the Joint Staff).

5.  This search yielded four additional documents, totaling 33 pages.  Bates-numbered pages 3508, 3509, and 3510, contained information denied under b(1), as their release would reveal classified military plans and operations, as well as intelligence activities.  In addition, certain portions of Page 3508 were withheld under b(6) to protect against a clearly unwarranted invasion of the personal

privacy of individuals on the Joint Staff who are not high level personnel. The remainder of these documents did not originate with the Joint Staff and thus were forwarded with recommended redactions to DoD's Office of the Freedom of Information on February 20, 2008 for referral to the originating DoD components.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 22nd day of May, 2008.

(sign) _____

**Exhibit 13**

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMEDOU OULD SLAHI | ) <br> ) <br> ) <br> ) <br> ) |
| | )   Civil Action No. 06-CV-0597 <br> )   (JR) ECF |
| | ) |
| Plaintiff, | )   DECLARATION OF <br> )   SUSAN J. BUTTERFIELD |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF <br> DEFENSE, | ) <br> ) |
| | ) |
| Defendant. | ) |
| | ) <br> ) |

## DECLARATION OF SUSAN J. BUTTERFIELD

I, Susan J. Butterfield, declare under penalty of perjury, pursuant to Title 28, USC

Section 1746:

    1. I am a civilian employee of the Department of the Army, currently assigned as

the Director, Freedom of Information/Privacy Office (FOI/PO), United States Army

Intelligence and Security Command (USAINSCOM), located at Fort George G. Meade,

Maryland. USAINSCOM is a Direct Reporting Unit (DRU) which responds directly to

the Deputy Chief of Staff of the Army for Intelligence (DA G-2). USAINSCOM is

responsible for synchronizing the Army's world-wide intelligence operations to produce

intelligence in support of the Army, combatant commands, and the National intelligence

community. USAINSCOM responds to taskings from national and departmental

authorities for Signal intelligence (SIGINT), human intelligence (HUMINT), counterintelligence (CI), imagery intelligence, measurement and signature intelligence (MASINT), technical intelligence (TI), electronic warfare (EW), and information operations (IO). Additionally, under Title 50 U.S.C., USAINSCOM provides National Intelligence Program support to combatant commands and Army organizations.

2. I have performed duty in this office as the Acting Director, FOI/PO, since 16 September 2003 and as Director, FOI/PO, since 3 October 2004. The matters stated herein are based on my personal knowledge and information provided to me in my official capacity.

3. Due to the nature of my official duties, I am familiar with the procedures followed by the USAINSCOM in responding to requests for information from its files pursuant to the FOIA, 5 U.S.C. § 552. Specifically, I am familiar with the treatment which has been afforded documents referred to this agency that are responsive to the Plaintiff's FOIA request.

4. Our office reviewed documents referred from the Defense Intelligence Agency (DIA) to the USAINSCOM in relation to the May 26, 2005 FOIA request by Ms. Sylvia Royce, counsel for plaintiff Mohammedou Ould Slahi, to the Office of Freedom of Information/Security Review, Department of Defense. In this instance, the documents were located by DIA in the course of conducting a search for records responsive to Ms. Royce's request. In total, USAINSCOM received a total of 171 pages from DIA. By letter dated 15 August 2007, the Department of Defense, Office of Freedom of Information, tasked USAINSCOM to conduct a search for records responsive to the Ms. Royce's request. By letter dated 16 August 2007, USAINCSOM FOI/PO tasked the USAINSCOM subordinate commands most likely to possess records responsive to Ms.

Royce's FOIA request. Searches were conducted at USAINSCOM Counterintelligence

HUMINT Collection Management Office, Army G2X (OSD-A2X), Fort Belvoir,

Virginia, the 902d Military Intelligence Group, Fort George G. Meade, Maryland and the

66th Military Intelligence Brigade, Darmstadt, Germany. These are the only components

reasonably likely to have responsive records. USAINSCOM FOI/PO initiated the search

by instructing appropriate staff to search within their files for records responsive to Ms.

Royce's FOIA request and to deliver any potentially responsive records, along with their

recommendations on potential exemptions, to this office for processing. USAINSCOM

depends upon the staff at the respective subordinate commands to search for responsive

records and provide those records to this office. USAINSCOM located an additional 32

pages responsive to Ms. Royce's FOIA request. The 32 pages were referred to three

other government agencies for their review. The entries on the *Vaughn* index reflect our

treatment of the documents received by USAINSCOM from DIA and whether the

documents were released in part or denied in their entirety. For the portions withheld

from the documents released in part and the documents denied in their entirety, I

determined that no reasonably segregable, non-exempt portions of these documents were

withheld from the Plaintiffs. All material withheld is exempt from disclosure pursuant to

a FOIA exemption or it was so intertwined with protected materials that meaningful

segregation was not possible without revealing the underlying protected information.

The FOIA exemptions applied to these documents are noted in the *Vaughn* index and

explained in detail in paragraphs 5 through 12, below.

FOIA EXEMPTIONS CLAIMED

Exemption (1) Classified Information

5. My responsibilities include ensuring the review of USAINSCOM information for classification purposes as required under Executive Order 12958, as amended.[1] All of the documents reviewed by this office and noted in the proceeding paragraphs contain information classified at the "Secret" level. Although the documents reviewed by this office are classified at the "Secret" level, some of the "Secret" documents contain information classified at the "Confidential" level. The classified information was exempted from release pursuant to 5 U.S.C. § 552(b)(1), which exempts information from release if it is specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and is in fact properly classified pursuant to such Executive order. In my current position, I have been delegated Original Classification Authority under the provisions of Section 1.3 of Executive Order 12958, as amended, for purposes of conducting classification reviews of documents requested under the FOIA. I personally reviewed each of the documents listed on the *Vaughn* index and noted above and determined that the information marked as classified so remains classified information, the public release of which would tend to cause serious damage to the national security of the United States. This review determined the information which requires continued classification satisfied both the substantive (relates to intelligence activities, sources or methods, and cryptologic) and procedural requirements (properly marked) of Executive Order 12958, as amended, and

---

[1] 60 Fed. Reg: 19825 (1995), and 68 Fed. Reg. 15315 (2003). E.O. 12958 was amended by E.O. 13292, effective March 25, 2003. See E.O. 12958, 3 C.F.R. (1995), reprinted as amended in 50 U.S.C. § 435 note at 91 (supp. 2004); see also E.O. 13292, 68 Fed. Reg. 15315 (March 28, 2003). All citations herein to E.O. 12958 are the the Order as amended by E.O. 13292.

therefore have been withheld as exempt from disclosure under subsection (b)(1) of the FOIA.

6. The documents referenced above in paragraph 4 have been identified as falling within Sections 1.2(a)(2), 1.2(a)(3) and 1.4(c), E.O. 12958, as amended. Section 1.2(a)(3) prescribes that information shall be classified as CONFIDENTIAL if an unauthorized disclosure of such information "reasonably could be expected to cause serious damage to the national security." Section 1.2(a)(2) states that "information shall be classified SECRET if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security". Section 1.4(c) states, in pertinent part, that information may not be considered for classification unless it concerns: (c) intelligence activities (including special activities), intelligence sources or methods or cryptology. Where the notation "b(1) 1.2(a)(2), 1.4(c), and/or 1.2(a)(3) appears on the *Vaughn* entries for those documents referenced in paragraph 4, information was withheld in part or in full for the reasons described herein. The aforementioned documents contain information derived from intelligence sources, intelligence methods and intelligence activities.

7. Release of the information described in paragraphs 5 and 6 would cause grave damage to national security as it would enable foreign authorities, targets of intelligence activities, and persons hostile to U.S. interests to identify U.S. intelligence activities, methods or sources and take countermeasures. This would have the effect of impeding the ability of the U.S. Government to acquire information that is often critical to the formulation of U.S. foreign policy, the conduct of foreign relations, and efforts in the Global War on Terror. Furthermore, much of the information withheld was derived from or contains information identifying sources that have provided information to the U.S.

government. Publicly revealing these sources would cause grave harm to U.S. intelligence activities, as so doing would have the effect of revealing what the U.S. government knows, discouraging others from cooperating with U.S. intelligence efforts, and place sources, their families, and associates at risk of harm.

Exemption (b)(2) – Internal Agency Practices

8. 5 U.S.C. § 552(b)(2) exempts in pertinent part information pertaining to internal personnel rules and practices of USAINSCOM where disclosure may risk circumvention of the law. Where (b)(2) is noted in the *Vaughn* index entries for the documents described in paragraph 4, information has been withheld that pertains to specific numbers assigned by USAINSCOM and other agencies to identify a message. An example of the information redacted are so-called "IIR," or intelligence information report numbers. These numbers are included at the header of message traffic and are used in the body of intelligence documents to refer to specific massages wherein sensitive and often classified information relating to intelligence gathering activities are shared. These numbers are unique to a particular message. The number reveals the agencies involved with the collection or sharing of intelligence data, and can be used to identify individual sources of information. Public release of these numbers would allow persons to piece together intelligence activities undertaken by various U.S. organizations, thereby jeopardizing future intelligence gathering efforts. Release of this information would seriously jeopardize the efforts of USAINSCOM and other government agencies in accomplishing the counterterrorism and other law enforcement missions prescribed by agency rules and regulations.

Exemption (b)(3) – Information Exempt from Disclosure by Statue

9. 5 U.S.C. § 552(b)(3) pertains to information specifically exempted from disclosure by statute. Where (b)(3) is noted in the *Vaughn* index entries for the documents described above, information has been withheld pursuant to 10 U.S.C. § 130b. 10 U.S.C. § 130b allows for the protection of personnel in overseas, sensitive, or routinely deployable units. All USAINSCOM components are considered deployable and may be positioned to provide operational support to commanders in a theater of operation.

10. Additionally, where (b)(3) is noted in the *Vaughn* index entries for the documents listed at Bates numbers 2413, 2414, 2419-2420, 2425-2426, 2451, 2458, 2469-2470, 2481, 2508, 2540, 2542-2543, 2545-2548, information has been withheld pursuant to 50 U.S.C. § 421. 50 U.S.C. § 421 allows for the protection of identities of US undercover intelligence officers, agents, informants and sources.

Exemption (b)5 – Internal and Deliberative Information

11. 5 U.S.C.§ (b)(5) pertains to information that is part of a decision making process. Where (b)(5) is noted in the *Vaughn* index entries for the documents described in paragraph 4, the information has been withheld because it pre-decisional, non-factual information contained in an intra-agency communication. The materials reflect the subjective opinions of individual employees regarding credibility of information, reliability of sources, potential motivations of individuals or organizations, potential adversarial capabilities, and possible future conduct. Protection of this information is critical in order to promote open, frank and candid analytical assessments of raw information and to ensure the unrestricted flow of unrefined intelligence products

between analysts and decision-makers. To the extent that information of a factual nature has been withheld, the information has been reviewed and determined that it could not reasonably be segregated form the protected materials without compromising the underlying information and/or decision process. Furthermore, none of the information withheld constitutes information which was the rationale for any Agency decision previously released to the public.

Exemption (b)6 – Personal Privacy

12. 5 U.S.C. § 552(b)(6) applies to matters that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". Where (b)(6) is noted in the *Vaughn* index entries for the documents described in paragraph 3, names and other identifying information of United States government personnel and other individuals have been withheld from the records to protect the privacy of the individuals. In the instances in which this exemption is asserted, the privacy interests of the individuals have been weighed against the public interest in disclosure, and I have determined the former outweighs the latter because of the disclosure of these DoD personnel's personally identifying information would not shed light on how DoD carries out its statutory duties.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 29th day of July 2008.

*Susan J. Butterfield*
Susan J. Butterfield

**Exhibit 14**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
MOHAMMEDOU OULD SLAHI,                       )
                                            )
                                            )
                                            )
                                            )   Civil Action No. 06-CV-0597(JR)
                                            )
                                            )
                  *Plaintiff*,               )
                                            )
        v.                                   )
                                            )
                                            )
UNITED STATES DEPARTMENT OF                  )
DEFENSE,                                     )
                                            )
                  *Defendant*.               )
                                            )
_____)

        I, James L. Pickett, GG-12, Department of Army civilian, declare under penalty of

perjury that the following is true and correct to the best of my knowledge:

I am the Chief, Freedom of Information Act Office and Deputy Chief, Foreign Disclosure Office

for the United States European Command (USEUCOM) Joint Analysis Center (JAC). EUCOM

is one of six regional United States Unified Combatant Commands. Its mission is to maintain

ready forces to conduct the full range of operations unilaterally or in concert with coalition

partners; enhance transatlantic security through support of NATO; promote regional stability;

counter terrorism; and advance U.S. interests in its area of responsibility, which includes

continental Europe, the United Kingdom and certain adjacent territories.

        1.    The JAC is responsible for the daily adjudication of disclosure actions, requests

for foreign disclosure, and foreign releases consistent with the National Disclosure Policy (NDP-

1) and other Department of Defense (DoD) policies.

2. I have held a succession of increasingly key intelligence assignments for various DoD organizations over the last 16 years, and am currently responsible for ensuring that USEUCOM complies with Executive Branch and departmental policies for classifying and safeguarding national security information. I make the following statements based on my personal knowledge and on information provided to me in my official capacity.

3. On August 15, 2007, DoD Office of Freedom of Information Act tasked USEUCOM to search for documents responsive to the May 26, 2005 request of Ms. Sylvia Royce, counsel for Guantanamo detainee Mohammedou Ould Slahi for "records relating to Mohamedou Ould Slahi aka Mohammedou Ould Salahi." USEUCOM tasked JAC to conduct a search because JAC is the component within USEUCOM most likely to have responsive records and there are no other components within USEUCOM reasonably likely to have responsive records. JAC was directed to conduct both manual and electronic searches of all files reasonably likely to contain responsive information, and it did so. Searches were conducted using both variants of plaintiff's name: Mohamedou Ould Slahi and Mohommedou Ould Salahi. All files reasonably likely to contain responsive information were searched. A total of 108 pages responsive to the FOIA request were located.

4. The documents identified by the JAC as responsive to the Plaintiff's FOIA request consist primarily of intelligence messages, reports analyzing and summarizing intelligence concerning groups or individuals linked to terrorist activities which are used within the JAC and intelligence community, and exchanges between JAC analysts and others engaged in operational or intelligence activities. They are: 2297-2306, 2307-2314, 2315-2322, 2323-2329, 2330-2335, 2336-2337, 2338-2339, 2340-2344, 2345-2347, 2348-2349, 2350-2351, 2352-2353, 2354-2355, 2356-2357, 2358-2359, 2360-2361, 2362-2363, 2364-2365, 2366-2367, 2368-

- 2 -

2370, 2371-2372, 2373-2375, 2376-2377, 2378-2379, 2380-2381, 2382-2383, 2384-2385, 2386-2387, 2388-2389, 2390-2392, 2393-2394, 2395-2398, 3296-3301 and 3435-3440. These documents are used by JAC personnel and shared with other U.S. Government agencies for conducting their assigned intelligence and military missions. They have been the subject of a line-by-line review by members of the JAC and an attorney in the USEUCOM Legal Office. The purpose of the review was to ensure that the information in these documents remains properly classified. I have reviewed samplings of these documents as well. This declaration explains the basis for withholding information from these records pursuant to FOIA Exemptions (b)(1), (2), (3) and (6).

5. The withheld documents are properly classified at the SECRET level pursuant to Executive Order 12958, as amended, Section 1.4 (c), which provides for the protection of intelligence activities, sources or methods. For example, the withheld documents include some referred to on the *Vaughn* index as "source directed requirements" and "information reports." These documents discuss the intelligence community's proposed questions to be asked of the detainees, as well as inquiries from one part of the intelligence community to another, including coordination between agencies concerning collection and dissemination of intelligence information. These questioning plans were formulated based upon other intelligence reports and information received from other intelligence sources, in addition to the detainee's own answers during prior interrogations. The documents also contain discussion about why the proposed questions are important to our intelligence gathering effort, as well as possible uses of that information in further inquiries.

6. To publicly disclose the information contained in these documents would damage national security because it would allow persons hostile to the United States to circumvent our

on-going counterterrorism efforts. For example, it would reveal relationships and associations and identify targets or additional groups and organizations under investigation. It would also damage the ability to collect on these targets or their associates who may not realize they have been identified or linked to any particular detainee. In addition, the disclosure could endanger the safety of the source or sources, as well as the safety of the detainee, as it will identify who provided or potentially have provided certain information. Furthermore, to disclose the withheld information would reveal various methods of intelligence collection, which are not only classified but also protected from disclosure under Exemption 2.

7. For many of the documents, a public release would reveal the names and locations of DoD personnel stationed in foreign territories. Personnel information such as this, if disclosed to a requester would result in a clearly unwarranted invasion of personal privacy. Additionally, such information, if revealed, would make US persons potentially more vulnerable to attack by terrorists who might have more freedom of action in a foreign country than they would if they were within the United States. The personally identifying information of these overseas DoD personnel is therefore properly withheld under both Exemptions 3 and 6.

8. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 31 day of July 2008.


_JAMES L. PICKETT, GG-12, DAC_