# Exhibit 15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMEDOU OULD SLAHI,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE,<br><br>    Defendant. | Civil Action No. 06-CV-0597 (JR)<br><br>DECLARATION OF<br>JACQUELINE J. SCOTT |

I, JACQUELINE J. SCOTT, hereby declare under penalty of perjury that the following information is true and correct to the best of my knowledge.

1. I serve as the Command Freedom of Information Act (FOIA) and Privacy Act (PA) Officer for the U.S. Central Command (USCENTCOM), Department of Defense (DoD). Based on my current position, I am familiar with the procedures adhered to by the DoD Office of Freedom of Information, in responding to requests for information pursuant to Title 5 U.S.C. § 552, the FOIA, and Title 5 U.S.C. § 552a, the Privacy Act.

2. On 3 July 2007 USCENTCOM FOIA Requester Service Center received a task from the Department of Defense, Office of Freedom of Information (DoD OFOI) to search for records relating to Plaintiff Mohamedou Ould Slahi (a.k.a. Mohommedou Ould Salahi). The requester is Mr. Slahi's attorney, Ms. Sylvia Royce. USCENTCOM FOIA Requester Service Center tasked U.S. Army Central *(ARCENT)* on 5 July 2007 to conduct a search in response to DoD OFOI's task memorandum. *ARCENT* is the service component which has primary administrative control

over detainee operations within USCENTCOM area of responsibility and is the component within USCENTCOM most likely to have responsive records. There are no other components within USCENTCOM reasonably likely to have responsive records. *ARCENT* was directed to conduct both manual and electronic searches of all files reasonably likely to contain responsive information, and it did so. It searched both detainee electronic databases and physical records located in file cabinets and other record holding areas. Searches were conducted using both variants of plaintiff's name: Mohamedou Ould Slahi and Mohommedou Ould Salahi. All files reasonably likely to contain responsive information were searched. No responsive records were found, however.

3. On 27 July 2007, *ARCENT* forwarded a "no records found" response to the USCENTCOM FOIA Requester Service Center. On or about August 16, 2007, the FOIA Requester Service Center e-mailed and mailed an official response letter to DoD OFOI, reiterating the "no records found" response.

4. On 9 August 2007, the U.S. Army Intelligence and Security Command (AISC) forwarded a one-paragraph extract to USCENTCOM for review and release recommendation in connection with Ms. Royce's FOIA request because the extract had originated from USCENTCOM. The USCENTCOM FOIA Requester Service Center tasked USCENTCOM Intelligence Directorate on 28 August 2007 to review and submit a release recommendation on the extract. The Intelligence Directorate's review determined that the one-paragraph extract was not responsive to Ms. Royce's request. USCENTCOM therefore informed DoD OFOI of that fact on 13 September 2007.

5. On 10 August 2007 USCENTCOM FOIA Requester Service Center was referred nineteen (19) documents from the Defense Intelligence Agency for review and release recommendation in

connection with Ms. Royce's FOIA request. During the review process, on 14 August 2007, two of the nineteen (19) documents were further referred to U.S. Southern Command for review and processing. As for the remaining seventeen (17) documents, on 29 October 2007, USCENTCOM, in consultation with DoD OFOI, determined that they were not responsive to Ms. Royce's FOIA request.

6. On 18 March 2008 and 24 March 2008, DoD OFOI forwarded to USCENTCOM for review and release recommendation two documents referred from the Office of Military Commissions. The two documents had originated in this command and were properly classified pursuant to Executive Order 12958, as amended. Specifically, classified portions of document one (numbers 3430 and 3431) and document two (numbers 3432, 3433, and 3434) fall within Section 1.4(c) of Executive Order 12958, as amended, because its disclosure would reveal an intelligence source and the type of intelligence information collected from the source, could compromise the source of the information. The withheld information includes the following: the association/connection of a specific detainee with intelligence interrogations whether by name or number; internal reports generated based on those interrogations; all sensitive intelligence information derived from an interrogation; and, the Field Reporter Number of the interrogator when associated with a specific interrogation. Because documents one and two contain above described information, they are exempt from release under 5 U.S.C. § 552b(1), which allows for the withholding of information that (A) is specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) is in fact properly classified pursuant to such Executive Order.

7. The same information withheld under Exemption 1 described above is additionally withheld under Exemption (b)(2) (high) because they contained operationally sensitive

information which, if released, would disclose internal rules, practices, and procedures which could be used by the enemy to circumvent lawful action by military forces. Information linking specific interrogations with specific detainees would reveal information about the structure of USCENTCOM's intelligence gathering operation that would permit hostile entities to circumvent USCENTCOM's lawful collection of intelligence.

8. Exemption (b)(6) protects from disclosure personally identifying information of DoD personnel when the disclosure would constitute an unwarranted invasion of privacy. The withheld information includes the personally identifying information (such as Field Reporter Number) of interrogation personnel that, if revealed, could put our service members, contractors and civilian employees at risk but would provide no meaningful information about government activities. As a result, the privacy rights outweigh any public interest in disclosure of the personal information.

9. Portions of documents one and two that are not exempt from disclosure under Exemptions 1, 2 and 6 have been forwarded to DoD Office of Freedom of Information with USCENTCOM's release recommendation.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this __25__ day of __July__ 2008, at MacDill AFB, FL.

_____
JACQUELINE J. SCOTT
YC-02, Department of the Air Force Civilian
Chief, Freedom of Information and Privacy Act Section
Records Branch, Resources and Analysis Division
Command and Control, Communications and
Computer Systems (C4) Directorate
U.S. Central Command

**Exhibit 16**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMEDOU OULD SLAHI,                )
                                      )
          Plaintiff,                  )
                                      )
     v.                               ) Civil Action No. 06-CV-0597(JR)
                                      )
UNITED STATES DEPARTMENT OF           )
                                      ) **DECLARATION OF**
DEFENSE,                              ) **JOSEPH P. CEGLIO,**
                                      ) **LT, JAGC, USN**
          Defendant.                  )
                                      )
_____)

Pursuant to 28 U.S.C. § 1746, I, Joseph P. Ceglio, declare as follows:

1.   I am Joseph P. Ceglio, Lieutenant, Judge Advocate General's Corps, U.S. Navy, serving as the Assistant Staff Judge Advocate to the Director, Naval Criminal Investigative Service (NCIS), Department of the Navy.

2.   The Secretary of the Navy designated the Director, NCIS as the initial denial authority and custodian responsible for all Freedom of Information Act (FOIA) and Privacy Act (PA) requests for documents held by NCIS.  See 58 F.R. 10702, 63 F.R. 35578; see also 32 C.F.R. § 701.118(m).  In turn, the Director, NCIS, delegated this responsibility to me.  See NCIS Administration Manual, Ch. 20-21.

3.   I have reviewed the Complaint in this civil action, and I have personal knowledge of the documents at issue.

The statements contained in this declaration are based upon my personal knowledge and upon information provided to me in my official capacity.

### Purpose of this Declaration

4. The purpose of this declaration is to explain the bases for the Naval Criminal Investigative Service's (NCIS) withholding of information from records responsive to the FOIA request filed by Ms. Sylvia Royce, the attorney for Mohammedou Ould Slahi ("Plaintiff"). The responsive records are being withheld pursuant to FOIA Exemptions 1 and 2, (5 U.S.C. § 552(b)(1), (b)(2), respectively) and 7(C) (5 U.S.C. § 552(b)(7)(C)). Information that reasonably can be segregated has been produced.

### Processing of Responsive Documents

5. On May 26, 2005, Plaintiff's counsel submitted a FOIA request ("Request") to the Department of Defense (DOD) requesting records relating to Plaintiff.

6. On November 9, 2007, the Department of Defense, Office of Freedom of Information, forwarded to the NCIS four pages of documents located by other components of DOD during their search for records responsive to the FOIA request.

7. Those four pages, bearing Bates stamp numbers 2559 through 2562, underwent a classification review conducted by Mr. Robert P. Bouchard, Division Chief of NCIS' Multiple Threat Assessment Center, Collection and Production. On November 26, 2007, in accordance with DOD Directive 5400.7-

R, SECNAVINST 5720.42F, and OPNAVINST S-5513.4D ENC-17, classified information on pages bearing Bates stamp numbers 2559 through 2562 was determined to continue warranting security classification.

8. The NCIS FOIA Office conducted a line-by-line review of the remaining unclassified portions of the four-page referral to determine whether there was segregable information within these documents. Page numbers 2559 through 2562 were released in part with portions of those pages withheld pursuant to FOIA Exemptions 1, 2, and 7(C).

**The Withholding of Responsive Information under Exemptions 1, 2, and 7 (C)**

9. FOIA Exemption 1 requires the government to withhold all information that is currently and properly classified pursuant to Executive Order No. 12,958, as amended. See 5 U.S.C. § 552(b)(1). Pages 2559 through 2562 were released in part with portions withheld pursuant to FOIA Exemption 1. The withheld information is properly classified at the SECRET level pursuant to Executive Order 12,958, as amended, Section 1.4(c), which provides for the protection of intelligence activities, sources or methods.

10. Pages 2559 through 2562 contain information that provides details on human intelligence involved in the collection of intelligence material. To disclose this information would disclose this collection of intelligence and damage our ability to collect on that target or

associated targets who may not have realized they have been linked, or identified as related, to the detainee. Furthermore, disclosure of this information would damage ongoing efforts to target individuals/groups involved in global extremist works of al Qaeda and associated groups. The public disclosure of this information reasonably could be expected to cause serious damage to the national security.

11. Additional information on pages 2559 through 2562 was also withheld pursuant to FOIA Exemption 1 to protect against the disclosure of information that would reveal internal agency codes that indicate intelligence sources, methods, or information. Included in this category of withholdings are: (1) classification codes, which generally appear near the bottom of a page; (2) codes indicating intelligence sources or information; and (3) codes describing a type of communication. These codes reflect sources of intelligence, intelligence activities, and the interplay between various U.S. government agencies in collecting intelligence.

12. If these codes were to be made public, abbreviations contained in the codes, which in some cases resemble the information they are meant to represent, could reveal the sources of intelligence. Those abbreviations could also be pieced together with other public information to identify the significance of the codes thereby revealing DOD's

intelligence activities. Accordingly, pursuant to Section 1.4(c) of Executive Order 12,958, as amended, this information remains properly classified at the SECRET level and its release reasonably could be expected to cause serious damage to national security.

13. FOIA Exemption 2 exempts from disclosure the internal guidelines, rules, practices and procedures of an agency if the disclosure would risk circumvention of the law. See 5 U.S.C. § 552(b)(2). Pages 2559 through 2562 were released in part with portions of the documents withheld pursuant to FOIA Exemption 2. The internal codes described in the preceding paragraph are also withheld under FOIA Exemption 2. These codes are purely for internal agency use. At the same time, because the codes contain or refer to information about intelligence sources or activities, their disclosure could enable persons hostile to the United States to piece together the government's methods for analyzing and handling intelligence data, as well as potentially intelligence data itself, thereby risking circumvention of U.S. counterterrorism efforts.

14. FOIA Exemption 7(C) covers materials compiled for law enforcement purposes whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The individual(s) whose information was redacted, including third parties, have a right to the protection of personal information from being

released to the general public. Individual names, social security numbers, addresses, phone numbers, initials, and other personal identifying data are private. The strong privacy interest of these individuals is not outweighed by the public interest in disclosure because the release of this private information does not further any substantial public interest. Furthermore, the disclosure would not advance any public interest in being informed about DOD's performance of statutory duties.

15. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: July 17, 2008

JOSEPH P. CEGLIO
Lieutenant
Judge Advocate General's Corps
U.S. Navy

**Exhibit 17**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMEDOU OULD SLAHI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 06-CV-0597 (JR) |
| v. ) | |
| ) | DECLARATION OF |
| ) | JOLYNN J. BIEN |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| DEFENSE, ) | |
| ) | |
| Defendant. ) | |

JOLYNN J. BIEN hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the Chief of Command Information Management and the Senior Freedom of Information Act ("FOIA") and Privacy Act Officer for the United States Transportation Command (USTRANSCOM), and have held these positions since 1 September 2005 and 1 October 2002, respectively. USTRANCOM is one of the nine unified combatant commands and is responsible for providing air, land and sea transportation for the Department of Defense ("DO"), including at times, providing the transportation of detainees. I am responsible for the implementation of the Command's FOIA program and issuance of agency-wide policy guidance and processing of the FOIA. *See* 32 CFR 286.

1

2. I am familiar with the subject FOIA request and litigation that is ongoing with DOD. The statements in this declaration are based upon my personal knowledge, review of information available to me in my official capacity, and upon my conclusions.

3. On 3 July 2007, I received a memorandum, dated 3 July 2007, from the DOD Office of Freedom Of Information ("OFOI"). Included with this memorandum was the FOIA request submitted by Sylvia Royce on behalf of the plaintiff, Mohamedou Ould Slahi (aka Mohammedou Ould Salahi) seeking all documents relating to plaintiff. I assigned this case the USTRANSCOM FOIA number 07-60 and tasked the USTRANSCOM Staff Judge Advocate (TCJA), the USTRANSCOM Command Surgeon (TCSG), the USTRANSCOM Operations and Plans Directorate (TCJ3) and the Air Mobility Command (AMC) (USTRANSCOM Component Command) to conduct a records search pursuant to the FOIA request. These are the only components within USTRANSCOM reasonably likely to have responsive records.

4. In response, personnel from TCJA, TCSG, TCJ3, and the AMC USTRANSCOM Component Command conducted an electronic and manual search for records in their possession. These searches found no records responsive to plaintiff's FOIA request. On 17 July 2007, I prepared and signed a "no records" response and sent it to the DOD OFOI and closed this request.

5. On 10 August 2007, I received a FOIA referral from the Defense Intelligence Agency ("DIA") of three documents. Only one of the documents was a TRANSCOM document.

This document is bates numbered 2676-2682 and contains the heading: USCINCTRANS Intelligence Center Scott AFB IL/TCJ2-C DTG 281400Z Feb 00 (Secret/No Forn), Subject: USTRANSCOM Counterintelligence/Counterterrorism Weekly CY00-008.  I assigned the USTRANSCOM FOIA Number 07-70 to this referral, and sent a tasking letter to the USTRANSCOM Directorate of Intelligence ("TCJ2") for a review of any responsive information and release determination.  I informed the Department of Defense FOIA office that the other two documents were United States Strategic Command ("USSTRATCOM") documents.  I was advised by the DOD FOIA officer, Stephen Fisher, that the two STRATCOM documents had already been referred to that office for review.

6.  The subject matter experts that conducted a review of the document bates numbered 2676-2682 recommended release of all unclassified information (except for certain information on page 2681 discussed in the next paragraphs) that was responsive to the plaintiff's request.  All classified information, which is contained on pages 2677 through 2680, is redacted because it is nonresponsive.

7.  Page 2681 contains responsive information that was redacted pursuant to exemptions 5 U.S.C. 552(b)(2) and (b)(6).

8.  Specifically, page 2681 contains certain website information, consisting of the Uniform Resource Locator (URL) addresses of sites on the Secure Internet Protocol Router Network, that is withheld under 5 U.S.C. 552(b)(2).  These URLs are purely for

3

internal use. Although such URLs are not classified, revealing them would disclose information about the structure of a classified internal computer network system and / or codes that, if released to the public, could be compromised at a later time. Consequently, their disclosure could enable persons hostile to the United States to piece together the government's methods for analyzing and handling intelligence data, as well as potentially intelligence data itself, thereby risking circumvention of U.S. counterterrorism efforts. Also this information is withheld under 5 U.S.C. 552(b)(2) because it is technical information relating to the handling and forwarding of sensitive information contained in the intelligence reports and messages that have been withheld. Releasing information about how intelligence reports are forwarded among agencies and within DOD would reveal internal guidelines for the sharing and transmission of such intelligence documents. This information is purely internal to the U.S. government, as it provides agencies with guidance concerning dissemination of and authorizations needed to share sensitive information. Release of this information would reveal which agencies have an interest in particular intelligence data, thereby revealing the agencies' relative competence and responsibilities and their manner of interaction regarding intelligence data, and risking circumvention of U.S. counterterrorism efforts.

9.  5 U.S.C. 552(b)(6) permits the government to withhold information about individuals when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Some information on page 2681 was redacted because it identified DOD personnel and its release would constitute a clearly unwarranted invasion of the personal privacy. DOD personnel have a legitimate privacy interest and personal safety

interest that would be threatened if this information was publicly disclosed and there is no public interest in having this information disclosed. The public release of the names and other identifying information would not shed any light on how DOD performed its statutory duties relative to plaintiff.

Pursuant to 28 U.S.C. and 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 17 day of July 2008, at Scott Air Force Base, Illinois.

*[signature]*

JOLYNN J. BIEN

5