**Exhibit 18**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMEDOU OULD SLAHI,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-CV-0597 (JR)<br>)<br>) DECLARATION OF<br>) LIEUTENANT COMMANDER P. WALKER<br>)<br>)<br>)<br>)<br>)<br>) |

Pursuant to 28 U.S.C. §1746, I, Lieutenant Commander Paul A. Walker, declare as follows;

1. I am a Lieutenant Commander in the United States Navy, currently assigned as the Staff Judge Advocate, Office of Naval Intelligence (ONI). I am familiar with Executive Order (EO) 12958 (as amended) and the procedures followed by ONI in responding to Freedom of Information Act (FOIA) requests regarding classified information as promulgated in Chief of Naval Operations Instruction S5513.4D, Department of the Navy Security Classification Guidance for General Intelligence. The statements made herein are based on my personal knowledge, upon information made available to me in my official capacity and upon determinations made in accordance with applicable regulations and directives.

2. The purpose of this declaration is to explain the withholding of information in the documents Bates stamped numbers 2648 through 2664 pursuant to the FOIA, 5 U.S.C. § 552(b)(1), (2) and (6). These documents were referred to the ONI from DoD's Office of Freedom of Information because the documents had originated from ONI.

3. I have reviewed these documents which are described as "source directed requirements" and "intelligence information reports."[1] These documents remain properly classified at the SECRET level pursuant to EO 12958 (as amended), Section 1.4(c), which protects intelligence activities, sources or methods.

### Justification for Withholding Information Under FOIA Exemption (b)(1)

4. FOIA Exemption (b)(1) allows for the withholding of national security information that is properly classified as authorized under EO 12958 (as amended). The information contained in these documents is classified in accordance with Section 1.1a of the EO. In accordance with Section 1.2(a)(2) this information was determined to be SECRET because disclosure of the information would reasonably be expected to cause serious damage to the national security by damaging the United States' ability to collect Human Intelligence (HUMINT).

5. In support of ONI's HUMINT collection efforts, these documents either submit questions to be asked of a HUMINT source or they contain intelligence information provided by a particular source. The documents clearly disclose intelligence gathering efforts and methods, as well as data that identify the use of the information collected.

6. The disclosure of this information would reveal the identity of the source and in many instances it would reveal the source's affiliation with other activities of interest. Disclosing the identity of a source could put the source and his family in grave danger of becoming victims of reprisal and retaliation. If this information were released, present and future sources would no longer provide useful information essential for the United States to effectively fight the War on Terrorism.

---

[1] The source directed requirement documents are identified as documents numbered 2648-2650, 2654, 2655 and 2662-2664. The intelligence information report documents are identified as documents numbered 2651-2653 and 2656-2661.

7. In many instances the redacted information concerns individuals other than the Plaintiff.[2] Disclosing this information would reveal what the United States knows or does not know about terrorist activity and would reveal the organizations and activities that are of interest to the United States. Release of this information would damage ongoing efforts to target extremists and would inform collection targets of our collection efforts against them.

### Justification for Withholding Information Under FOIA Exemption (b)(2)

8. Withheld under FOIA Exemption (b)(2) was information internal to ONI that if known would allow persons hostile to the United States to impede our counterterrorism efforts. This information includes internal codes and serial numbers.[3] The internal codes refer to specific intelligence organizations. Their disclosure could enable terrorists to piece together methods for analyzing and disseminating intelligence data. The withheld serial numbers are internal numbers used for source identification. Release of this information would allow individuals to piece together enough information to identify a source.

### Justification for Withholding Information Under FOIA Exemption (b)(6)

9. Exemption (b)(6) permits the government to withhold information about individuals when the disclosure would constitute an unwarranted invasion of personal privacy. The withheld information contains the names, positions and telephone numbers of ONI personnel involved in HUMINT collection and evaluation efforts. Release of this information would clearly be an unwarranted invasion of personal privacy that would compromise the individual's privacy interest without shedding further light on how ONI does business.

10. To protect the personal safety and privacy of other individuals of interest to the United States all names and personally identifying data were withheld from release. Release of this

---

[2] Document 2651-2653 and 2656-2661 provide information regarding sources that are not the Plaintiff.
[3] Documents 2648, 2651, 2654, 2656 and 2662 contain internal codes and serial numbers.

- 4 -

information would clearly be an unwarranted invasion of personal privacy as it would connect the ONI personnel to United States' counterterrorism efforts regarding terrorist activities or groups.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 28th day of May 2008.

_____
PAUL A. WALKER

**Exhibit 19**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMEDOU OULD SLAHI, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE, <br><br> Defendant. | Civil Action No. 06-CV-0597 (JR) <br><br> DECLARATION OF <br> REAR ADMIRAL <br> DAVID M. THOMAS, JR. |

Pursuant to 28 U.S.C. §1746, I, Rear Admiral David M. Thomas, Jr., declare as follows:

1. I am a Rear Admiral in the United States Navy, with 31 years of active duty service. I currently serve as the Commander of Joint Task Force – Guantanamo (JTF-GTMO), at Guantanamo Bay, Cuba (Guantanamo). I have held this position since 27 May 2008. As such, I am directly responsible for the successful execution of the JTF-GTMO mission to conduct detention and interrogation operations and exploit intelligence in support of the Global War on Terror (GWOT), coordinate and implement detainee screening operations, and support law enforcement and war crimes investigations. Prior to assuming command of JTF-GTMO, I served as the Director of Joint Operations Directorate on the Staff of Commander, U.S. Fleet Forces Command.

2. My responsibilities as Commander of JTF-GTMO include the review of JTF-GTMO information for classification purposes pursuant to EO 12958 ("Classified National Security

1

Information"), as amended, and the preparation of declarations in support of Exemption 1 withholdings under the FOIA. As the Commander, JTF-GTMO, I have been designated by the Under Secretary of the Defense for Intelligence as an Original Secret Classification Authority and a declassification authority pursuant to EO 12958, as amended, Sections 1.3 and 3.1. My predecessor, Rear Admiral Mark H. Buzby, likewise exercised Original Secret Classification Authority when he served as the Commander of JTF-GTMO.[1]

3. I am familiar with the 26 May 2006 FOIA request of plaintiff's counsel seeking all documents relating to plaintiff, an enemy combatant detained at the Guantanamo Bay Naval Base in Cuba, and the ensuing litigation. I submit this declaration in support of DoD's motion for partial summary judgment with respect to responsive information withheld by DoD components other than United States Southern Command. The statements contained in this declaration are based upon my personal knowledge and information provided to me in my official capacity.

### Purpose of this Declaration

4. The purpose of this declaration is to describe certain categories of classified information in responding to plaintiff's FOIA request for records relating to plaintiff, and to describe the harm that would be caused by the disclosure of each of those categories of classified information. Information originally classified through the action of prior Commanders of JTF-GTMO was occasionally shared with other DoD components or outside government agencies and incorporated into documents prepared by those components and agencies. This declaration supports those DoD components or outside agencies' assertion of Exemption 1 under FOIA regarding classified information originated with JTF-GTMO. Accordingly, the categories of classified information discussed herein are not intended to be exhaustive.

---

[1] Rear Admiral Buzby served as the Commander of JTF-GTMO from 22 May 2007 until 27 May 2008.

2

### Justification for Withholding Classified Information that Reveals Foreign Relations or Foreign Activities of the United States

5. The first category of information is information that reveals foreign relations or foreign activities of the United States, including confidential sources. As part of ongoing GWOT, the United States Government routinely conducts counterterrorism activities with foreign governments involving individuals detained at JTF-GTMO. Such activities are conducted with the expectation that they will not be publicly released by the United States Government. Official public release of information related to such activities, in contravention of such expectations of confidentiality, would substantially impair the U.S. Government's ability to secure cooperation by foreign governments in the future. Foreign governments will be less likely to cooperate with U.S. counterterrorism efforts if they cannot be confident that information regarding their participation will be safeguarded and remain confidential. A decrease in cooperation by foreign governments would, in turn, severely hamper the counterterrorism efforts of the United States.

6. The information in this category was classified at the SECRET level through the action of the Commander of JTF-GTMO pursuant to Section 1.4(d) of EO 12958, as amended. I have determined, that this category of information remains properly classified at the SECRET level.

### Justification for Withholding Information Provided by a Foreign Government

7. Information provided by a foreign government about the plaintiff was classified at the SECRET level pursuant to Section 1.4(b) of EO 12958, as amended, through the action of my predecessors. As part of ongoing intelligence gathering operations, JTF-GTMO routinely solicits and receives information from foreign governments about detainees, including

3

intelligence and law enforcement information. Such information is provided to JTF-GTMO in confidence and with the expectation that it will not be publicly released by DoD.[2] Official public release of such information, in contravention of such expectations of confidentiality, would substantially impair DoD's ability to secure cooperation by foreign governments in providing information about detainees or otherwise. Foreign governments will be less likely to cooperate with U.S. intelligence collection and other counterterrorism efforts if they cannot be confident that the information they provide will be safeguarded and remain confidential. A decrease in cooperation by foreign governments would, in turn, severely hamper the counterterrorism efforts of the United States.

8. Under Executive Order 12958, "[t]he unauthorized disclosure of foreign government information is presumed to cause damage to the national security." E.O. 12958, § 1.1(e). I have determined that this category of foreign government information remains properly classified.

### Justification for Withholding Intelligence Data about Plaintiff and His Activities and Other Persons or Organizations

9. DoD has compiled intelligence data about plaintiff. Information in this category typically describes plaintiff's biographical information; the circumstances of plaintiff's capture and what he had in his possession when he was captured; the circumstances and date of his transfer to Guantanamo; his travel; his affiliations with individuals and organizations of intelligence interest; and his activities in support of those organizations. The intelligence data in this category also includes information about other persons and organizations. This category of information was classified at the SECRET level through the action of the Commander of JTF-

---

[2] This category of information is also protected from disclosure under Exemption 3, which protects matters "specifically exempted from disclosure by statute . . . ." 5 U.S.C. § 552(b)(3). The relevant statute is 10 U.S.C. § 130c, which permits the Secretary of Defense to withhold from public disclosure otherwise required by law any sensitive information provided to DoD by a foreign government in confidence.

GTMO pursuant to Section 1.4(c) of EO 12958, as amended, which permits the classification of "intelligence activities (including special activities), intelligence sources or methods, or cryptology."

10. If the United States publicly released information about our intelligence concerning plaintiff, including his affiliations with certain individuals and organizations, how those affiliations came about, and the actions he took while associated with those individuals and organizations, this would reveal details about our intelligence activities, the intelligence we have gleaned regarding individuals and organizations of intelligence interest, the sources of our intelligence, and the specific information obtained from such sources. Revealing the extent of intelligence gathered concerning plaintiff would show, among other things, what the United States knows about certain individuals and organizations; what the government does not know; and the leads it followed or did not follow based on the intelligence it obtained. Those critical facts would also be revealed through disclosure of withheld intelligence data concerning other individuals and organizations. The potential damage caused by such revelations would be exacerbated, given that the intelligence could be pieced together with other information that has entered the public domain to reveal a considerable amount of detail about our intelligence concerning certain individuals and organizations.

11. In addition, release of information about the circumstances of plaintiff's capture and his transfer to Guantanamo, particularly if pieced together with other, similar information about other detainees, would reveal details about how detainees come into U.S. custody, which detainees were transferred to Guantanamo through what means, and the routing of planes and movement of detainees on the ground in the theater of operations.

12. Ultimately, release of the information described above would aid persons hostile to the United States in hiding their activities and finding other means to thwart our intelligence-gathering efforts, evading capture by U.S. authorities, and otherwise thwarting U.S. counterterrorism efforts.

13. Additionally, public release of such intelligence data, given that it would result in revealing sources of our intelligence about plaintiff and other persons and organizations, would have a chilling effect on human intelligence collection and will substantially impede DOD's ability to gather actionable intelligence from other sources, including current Guantanamo detainees. Releasing this type of information would reveal publicly who has cooperated with interrogators at Guantanamo and elsewhere and the information they provided. Such public identification of intelligence sources would place those sources, or individuals who are perceived by others as sources, at risk of retribution and deter other sources from cooperating with ongoing intelligence collection efforts.

14. In strategic interrogations such as those conducted at JTF-GTMO, the cooperation of human intelligence sources is crucial to the on-going human intelligence efforts. In fact, due to the nature of terrorist organizations, such as al Qaeda, and these organizations' methods of operation, human intelligence is the most essential piece of the strategic intelligence being gathered in the GWOT and is also the most effective source of actionable information for the anticipation and interdiction of terrorist activity.

15. Because of the value of human intelligence, detained enemy combatants, whether detained at JTF-GTMO or elsewhere, are a potential source of information needed to wage the GWOT effectively. Detainees at JTF-GTMO continue to provide useful information about a variety of subjects, including how al Qaeda, the Taliban and other terrorist organizations are

organized and funded, their leadership structures, how these organizations recruit, train and retain members and how they plan, command and control their operations. These detainees also continue to provide useful intelligence about the physical areas of operations in which the GWOT is conducted, the locations of training facilities and safe houses, travel patterns and routes used for smuggling people and equipment, as well as the identities of newly-captured fighters. The Joint Intelligence Group at JTF-GTMO gains useful information from detainees on nearly a daily basis. Some of this information contributes pieces to the mosaic of how terrorist organizations operate. Other information supports real-time, ongoing operations in the ongoing war. Given the nature of JTF-GTMO's intelligence operations, even individuals who have been detained for a period of years continue to possess and provide information that is useful to the U.S. government and its allies in the GWOT.

16. Such sources will not provide information if they believe that doing so will jeopardize their safety and/or the safety of their families. It is clear that people who cooperate with capturing authorities are subject to reprisals from those who believe the source provided information about them. Concern about these reprisals and retaliation are particularly acute in the case of individuals linked to terrorist activity. Alleviating the perceived or genuine reprisal concerns of cooperating individuals is an essential part of developing human intelligence sources and gathering usable information. Cooperating detainees at JTF-GTMO have specifically voiced concerns for their families' safety, as well as their own.

17. For all of these reasons, I have determined that this category of information remains properly classified pursuant to Section 1.4(c) of EO 12958, as amended, and that its release reasonably could be expected to cause serious damage to the national security.

### Justification for Withholding Intelligence Assessments and Conclusions

18. JTF-GTMO and U.S. Southern Command analysts and other personnel have made intelligence assessments and conclusions about plaintiff. Included in this category of information are assessments of intelligence data obtained from particular intelligence sources and the data analysts relied on in making those assessments. This category of information was classified at the SECRET level through the action of prior Commander of JTF-GTMO.

19. These intelligence assessments and conclusions are vital to DoD's assessment of plaintiff's activities, and remain vital to its ongoing efforts to obtain intelligence on other individuals and organizations. The intelligence data, assessments, and conclusions pertain to individuals and organizations of intelligence interest, including the relationships among those individuals and organizations. Disclosure of this analytical material, especially in conjunction with disclosure of the specific intelligence data that is necessarily intertwined with them, would reveal how analysts evaluate intelligence information and the conclusions they reach. Such revelations would aid persons hostile to the United States in hiding their activities and thwarting the government's intelligence gathering, and severely harm the United States' ongoing efforts to gather intelligence critical to fighting the GWOT.

20. I have therefore determined, pursuant to Section 1.4(c) of EO 12958, as amended, that this information remains properly classified at the SECRET level and that its release reasonably could be expected to cause serious damage to national security.

### Justification for Withholding Intelligence Codes

21. Internal codes that indicate intelligence sources, methods, or information were classified at the SECRET level, pursuant to Section 1.4(c) of EO 12958, as amended, by my predecessors. Included in this category of information are classifications codes; codes indicating intelligence sources or information; encoded titles of exhibits used in plaintiff's Combatant

Status Review Tribunal and Annual Review Board proceedings, and codes describing a type of information.

22. These codes, while for internal use only, reflect sources of intelligence, intelligence activities and the interplay between various U.S. government agencies in collecting intelligence. If these codes were to be made public, abbreviations contained in the codes, which in some cases resemble the information they are meant to stand for, could reveal the courses of intelligence. Those abbreviations could also be pieced together with other public information to identify the significance of the codes to DoD's intelligence activities.

23. Accordingly, I have determined that these codes remain properly classified at the SECRET level and that its release reasonably could be expected to cause serious damages to national security.

### Justification for Withholding Intelligence Methods

24. My predecessor has classified information reflecting intelligence methods used by JTF-GTMO personnel in gathering, analyzing, and coordinating intelligence data relating to plaintiff. This category of information includes: interrogation techniques and plans used in connection with sources of human intelligence; tools and methods for analyzing intelligence data; tools and methods for coordinating intelligence gathering and analysis among DOD components and other agencies of the government; and, plans for further intelligence gathering based on specific data obtained from intelligence sources.

25. Intelligence methods are the means by which JIG at JTF-GTMO and other intelligence agencies collect intelligence data to support military operations and to assess, and counter, terrorist and military threats. These methods and practices must be protected because their public release would be of material assistance to those who would seek to penetrate, detect,

prevent, avoid or otherwise damage the intelligence operations of the United States. The actual loss to the United States if such methods are revealed is not only the cost of developing the initial methods, but also the loss of intelligence while new methods are developed to replace those lost. In particular, public disclosure of specific methods used with sources of human intelligence, whose identities are themselves classified as described above, would allow individuals of intelligence interest to anticipate and immunize themselves from those methods. Of particular concern is an individual's ability to anticipate particular interrogation techniques.

26. JTF-GTMO's and U.S. Southern Command's methods of coordinating intelligence gathering and analysis among agencies and components are also central to their effort to counter acts of terrorism and support military operations. Effective military and counterterrorism strategy depends on the coordination of intelligence gathering among agencies and components responsible for gathering and analyzing intelligence data. Revealing the nature of that coordination and how agencies and components work together could reveal their areas of relative competence, or the distinct intelligence tools they employ, thereby permitting persons of interest to the United States to tailor their behavior and adopt means to thwart the agencies' efforts.

27. Section 1.4(c) of EO 12958 recognizes that the disclosure of intelligence methods can cause harm to national security. Accordingly, I have determined that information pertaining to intelligence methods described in the preceding paragraphs remains properly classified at the SECRET level and that its release reasonably could be expected to cause serious damage to national security.

### Justification for Withholding Information Concerning Military Plans and Operations

28. Information concerning military plans and operations may be classified under the authority of Section 1.4(a) of EO 12958, as amended, if its release could cause damage to the

national security of the United States. Certain documents prepared by JTF-GTMO were generally related to military operations against hostile forces and were classified at the SECRET level through the action of my predecessors. I have determined that information continues to warrant classification because its disclosure would allow hostile entities to learn of the effectiveness and vulnerabilities in the military operations in the United States and abroad.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 29 July 2008

DAVID M. THOMAS, JR.
Rear Admiral, United States Navy
Commander, Joint Task Force – Guantanamo